# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DORIS M. JACKSON, Pharm.D., | § | |
|      Plaintiff, | § | |
| | § | Civil Action No. 4:11-CV-4092 |
| v. | § | |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
|      Defendant. | § | |
| | § | |
| | § | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES
Division Chief - General Litigation

DARREN G. GIBSON
Attorney-In-Charge
Texas Bar No. 24068846
Southern District ID No. 1041236
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX
Darren.Gibson@texasattorneygeneral.gov

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

I.        PROCEDURAL BACKGROUND.................................................................1

II.       ARGUMENT AND AUTHORITY ................................................................2

          A.       Plaintiff Cannot Establish A *Prima Facie* Claim Of Discrimination On The
                   Basis Of Race, Skin Color, National Origin, Or Age. ..........................................3

                   1.       Plaintiff's Discrimination Claim Is Limited To Salary And Pay
                            Decisions From March 17, 2009 Through The Date Of Her Charge. ......4

                   2.       Plaintiff Cannot Establish a *Prima Facie* Claim For Discrimination
                            On The Basis Of Pay...................................................................................6

                   3.       Plaintiff Cannot Identify People Outside Her Protected Class Who Are
                            Allegedly Treated More Favorably...........................................................8

          B.       Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation...........................10

                   1.       Plaintiff Was Not Subject To Adverse Employment Actions After
                            Filing Her Charge Of Discrimination. ....................................................12

                   2.       Plaintiff's Own Admissions Defeat Any Suggestions Of Causation.........14

                   3.       TSU Had A Legitimate, Non-Retaliatory Reason For Any
                            Purportedly Retaliatory Action. ..............................................................15

          C.       Plaintiff's First Amendment Claim Against TSU Is Subject To Dismissal. .........16

          D.       TSU Is Immune From Plaintiff's Self-Care FMLA Claim....................................18

          E.       Plaintiff's Claim Under The Texas Public Information Act Is Subject
                   To Dismissal. ........................................................................................................19

III.      CONCLUSION..............................................................................................19

CERTIFICATE OF SERVICE ........................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 2

*Arensdorf v. Paulson*,
Civ. A. No. H-06-3324, 2008 WL 4411597 (S.D. Tex. Sept. 29, 2008) ................... 8

*Arora v. Starwood Hotels & Resorts Worldwide, Inc.*,
294 Fed.Appx. 159 (5th Cir. 2008) ..................................................................... 8

*Babrocky v. Jewel Food Co.*,
773 F.2d 857 (7th Cir.1985) ............................................................................... 4

*Barnett v. Boeing Co.*,
306 Fed.Appx. 875 (5th Cir. 2009) ..................................................................... 13

*Beattie v. Madison County Sch. Dist.*,
254 F.3d 595 (5th Cir. 2001) ............................................................................. 17

*Bender v. City of Clearwater*,
2006 WL 1046944 (M.D. Fla. Apr. 19, 2006) ...................................................... 16

*Burlington Northern & Santa Fe Railway Co. v. White*,
548 U.S. 53 (2006) ...................................................................................... 6, 11

*Burns-Toole v. Byrne*,
11 F.3d 1270 (5th Cir. 1994) ............................................................................. 17

*Cantu v. Vitol, Inc.*,
Civ. A. No. H-09-0576, 2011 WL 486289 (S.D. Tex. Feb. 7, 2011) ....................... 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................... 2

*Clayton v. Rumsfeld*,
106 Fed. Appx. 268 (5th Cir. 2004) ..................................................................... 4

*Coleman v. Court of Appeals of Maryland*,
132 S.Ct. 1327 (2012) ................................................................................. 18, 19

*Connick v. Myers*,
461 U.S. 138 (1983) ......................................................................................... 17

*Davis v. Dallas Area Rapid Transit*,
383 F.3d 309 (5th Cir. 2004) ............................................................................... 3

*DeHart v. Baker Hughes Oilfield Operations, Inc.*,
214 Fed.App'x 437 (5th Cir. 2007) ..................................................................... 14

*Dorsett v. Bd. of Trustees for State Colleges & Univs.*,
940 F.2d 121 (5th Cir. 1991) ............................................................................. 18

*Earle v. Aramark Corp.*,
247 Fed.Appx. 519 (5th Cir.2007) ....................................................................... 7

*Ellis v. Compass Group USA, Inc.*,
  426 Fed.Appx. 292 (5th Cir. 2011) ............................................................ 6

*Ellis v. Principi*,
  246 Fed.Appx. 867 (5th Cir. 2007) ............................................................ 6

*Evans v. City of Houston*,
  246 F .3d 344 (5th Cir. 2001) ............................................................ 11, 14

*Everett v. Central Mississippi, Inc. Head Start Program*,
  444 Fed. Appx. 38 (5th Cir. 2011) ............................................................ 15

*Felder v. Winn-Dixie Louisiana, Inc.*,
  2004 WL 764189 (E.D. La. Apr. 7, 2004) ............................................................ 9

*Fine v. GAF Chemical Corp.*,
  995 F.2d 576 (5th Cir. 1993) ............................................................ 4

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ............................................................ 17

*Harris v. Victoria Indep. Sch. Dist.*,
  168 F.3d 216 (5th Cir. 1999) ............................................................ 17

*Hernandez v. Yellow Transp., Inc.*,
  670 F.3d 644 (5th Cir. 2012) ............................................................ 14

*James v. Sadler*,
  909 F.2d 834 (5th Cir. 1990) ............................................................ 2

*Janmeja v. La. State Univ.*,
  116 F.3d 475, 1997 WL 255550 (5th Cir. Apr. 14, 1997) ............................................................ 18

*King v. Louisiana*,
  294 Fed.App'x 77 (5th Cir. 2008) ............................................................ 13

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir.1994) ............................................................ 13

*Lushute v. Louisiana, Dept. of Social Services*,
  2012 WL 1889684 (5th Cir. May 25, 2012) ............................................................ 13

*McCoy v. City of Shreveport*,
  492 F.3d 551 (5th Cir. 2007) ............................................................ 3, 4, 11

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ............................................................ 3

*Mitchell v. Snow*,
  326 Fed.App'x. 852 (5th Cir. 2009) ............................................................ 13

*National R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) ............................................................ 5

*Nelson v. University of Tex.*,
  535 F.3d 318 (5th Cir. 2008) ............................................................ 18

*O'Brien v. Lucas Assocs. Personnel, Inc.*,
  127 Fed. Appx. 702 (5th Cir. 2005)................................................................. 8

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
  245 F.3d 507 (5th Cir. 2001) .............................................................. 3, 7, 8

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998)........................................................................ 11

*Pegram v. Honeywell, Inc.*,
  361 F.3d 272 (5th Cir. 2004) .............................................................. 5

*Rachid v. Jack In The Box, Inc.*,
  376 F.3d 305 (5th Cir. 2004) .............................................................. 3

*Shackelford v. Deloitte & Touche, L.L.P.*,
  190 F.3d 398 (5th Cir.1999) .............................................................. 7

*Southard v. Texas Bd. of Criminal Justice*,
  114 F.3d 539 (5th Cir. 1997) .............................................................. 6

*Taylor v. Books A Million, Inc.*,
  296 F.3d 376 (5th Cir. 2002) .............................................................. 4

*Turner v. Baylor Richardson Medical Center*,
  476 F.3d 337 (5th Cir. 2007) .......................................................... 13, 18

*Turner v. St. Luke's Episcopal Health System*,
  Civ. A. No. H-06-1668, 2008 WL 706709 (S.D. Tex. Mar. 14, 2008) .................... 14

*Wheeler v. BL Development Corp.*,
  415 F.3d 399 (5th Cir. 2005) .............................................................. 7

*Young v. City of Houston*,
  906 F.2d 177 (5th Cir. 1990) .............................................................. 4

**Statutes**

42 U.S.C. § 2000e-5(e)(1)..................................................................... 5

Tex. Gov't Code Ch. 552 ..................................................................... 19

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................ 2

TO THE HONORABLE MELINDA HARMON:

Now comes Defendant Texas Southern University ("TSU"), and files this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully shows the Court as follows:

## I.    PROCEDURAL BACKGROUND

This case arises out of Plaintiff's employment with TSU as an Associate Professor in the College of Pharmacy and Health Sciences ("COPHS").  (Dkt. # 14, Am. Compl. ¶ 3.1.)  Plaintiff filed her original complaint on November 22, 2011, and asserted employment discrimination and retaliation claims on the basis of race, skin color, and national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as on the basis of age under the Age Discrimination in Employment Act ("ADEA").  (Dkt. # 1, Orig. Compl. ¶¶ 4.9, 4.10, 4.14.)  TSU submitted its answer and denied all the allegations of discrimination and retaliation in the original complaint. (Dkt. # 6, Orig. Answer ¶¶ 4.8-4.10.)

On May 3, 2012, the Court entered a scheduling order that set June 25, 2012 as the deadline for parties to file motions for leave to amend pleadings.  (Dkt. # 13, Sch. Order ¶ 1.) Instead of filing a motion for leave to amend (as required by Rule 15 and the Scheduling Order), Plaintiff simply filed her First Amended Complaint on June 25, 2012.  (Dkt. # 14. Am. Compl.)

Plaintiff's amended complaint again asserts the same claims for employment discrimination and retaliation on the basis of race, skin color, national origin and age.  (Dkt. # 14. Am. Compl. ¶¶ 4.8-4.10.)  In addition, Plaintiff's amended complaint includes allegations of (1) denial of her First Amendment free speech rights, (2) violation of rights secured by the Family Medical Leave Act, and (3) denial of her rights to obtain public records under Texas state law. (*Id.* ¶¶ 2.1, 2.3, 2.4, 4.11, 4.13, 4.20.)

On July 9, 2012, TSU moved to dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. (Dkt. # 15.) That motion is now fully briefed and currently pending before the Court. Pursuant to the Scheduling Order, dispositive motions are due by October 31, 2012, and trial is set for March 11, 2013. (*Id.*) This Motion for Summary Judgment is timely filed in accordance with the Court's Scheduling Order.

## II. ARGUMENT AND AUTHORITY

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, summary judgment should be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to determine whether a genuine issue of material fact exists, the issue for the court is "whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

The substantive law governing the suit identifies the essential elements of the claims at issue and therefore governs which facts are material. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The party seeking summary judgment is not required to produce evidence showing the absence of a genuine issue of material fact, but can satisfy his burden by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325. Once the defendant had met his burden, the plaintiff may not rest on

2

unsubstantiated allegations in his pleadings, but must produce competent, tangible evidence to survive summary judgment.  *Id.*

### A.  Plaintiff Cannot Establish A *Prima Facie* Claim Of Discrimination On The Basis Of Race, Skin Color, National Origin, Or Age.

Plaintiff alleges that TSU has discriminated against her on the basis of race, skin color, and national origin under Title VII and on the basis of her age under the ADEA.  (Dkt. # 14, Am. Compl. ¶¶ 4.9-4.10.)  For the reasons set forth in TSU's Motion to Dismiss, Plaintiff's ADEA claim is barred by sovereign immunity.  (Dkt. # 15 at 4.)  Moreover, Plaintiff cannot establish a *prima facie* claim of discrimination to survive summary judgment.

"Assuming a plaintiff has exhausted his administrative remedies, [she] may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence."  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).  When a plaintiff does not allege any direct evidence of discrimination (as here), courts apply the *McDonnell Douglas* burden-shifting analysis.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a *prima facie* case of discrimination."  *Davis*, 383 F.3d at 317.

To establish a *prima facie* case of employment discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably.  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *see also Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (similar standard for age discrimination).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. … If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557.

Here, Plaintiff does not allege any direct evidence of discrimination on the basis of race, ethnicity, national origin or age. Thus, this brief will address the *McDonnell Douglas* analysis as to each of Plaintiff's discrimination claims based on actionable adverse employment actions within the limitations period for which Plaintiff exhausted her administrative remedies.

### 1. Plaintiff's Discrimination Claim Is Limited To Salary And Pay Decisions From March 17, 2009 Through The Date Of Her Charge.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a *timely* charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (emphasis added). "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges." *Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004) (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985)). Thus, the Fifth Circuit has repeatedly found that plaintiffs may not pursue Title VII claims that were not included in the charge. *See, e.g., Fine v. GAF Chemical Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Young v. City of Houston*, 906 F.2d 177 (5th Cir. 1990).

For the purpose of a discrimination claim, "an adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). To be timely, a claimant must file a charge within 300 days of the allegedly discriminatory employment practice. 42 U.S.C. § 2000e-5(e)(1). "Each discriminatory act starts a new clock for filing charges alleging that act," such that the charge "must be filed within the [] 300 day time period after the discrete discriminatory act." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Here, Plaintiff filed a charge with the EEOC on January 11, 2010, alleging discrimination on the basis of race, skin color, national origin, and age.[1] Furthermore, Plaintiff complained of discrimination based on her salary, denial of merit pay increases, being denied promotion to full professor, and being given a heavier workload than other professors.[2] In light of the requirement that charges be filed within 300 days of the adverse employment action, Plaintiff exhausted her administrative remedies only for those qualifying adverse employment actions included in her charge that occurred on or after March 17, 2009, or 300 days prior to the filing of her charge.

In her complaint, Plaintiff alleges that she was "discriminated against in her rank and assigned duties, compensation, course assignments and volume of responsibilities, and treatment of her students, in particular those for whom she serves as an advisor." (Dkt. 14 ¶ 4.8.) Because Plaintiff's charge of discrimination did not include any allegations regarding the treatment of her students, those allegations are not actionable for failure to exhaust her administrative remedies.[3] Moreover, the only allegations that can form the basis of her discrimination claim are those

---

[1] Attachment 1, Jackson Depo. 126:12-19 & Attachment 2, Exh. 14 (TSU-001319).
[2] Attachment 2, Jackson Depo. Exh. 14 (TSU-001319).
[3] Even if Plaintiff could make out a claim based on treatment of students, she alleged in her deposition that Dean Hayes treated all students poorly, including those that were Plaintiff's advisees and others. Jackson Depo. 94:20-95:19. This defeats any suggestion of discriminatory intent against Plaintiff based on the treatment of her advisees.

regarding rank and compensation, as the other alleged actions regarding Plaintiff's assignments, workload, and treatment of her students do not constitute ultimate employment decisions. *See Ellis v. Compass Group USA, Inc.*, 426 Fed.Appx. 292, 296 (5th Cir. 2011) ("Imposing a higher workload than that given to other employees is not an adverse employment action under title VII."); *Ellis v. Principi*, 246 Fed.Appx. 867, 870 (5th Cir. 2007) (holding that allegations of "less favorable work assignments than two other employees" insufficient and not "ultimate employment decision"); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997) ("Undesirable work assignments are not adverse employment actions.").[4]

Finally, Plaintiff alleges in her charge and complaint that she has been subject to discrimination on the basis of her rank and the denial of a promotion to full professor.[5] However, it is undisputed that Plaintiff applied for and was denied promotion to full professorship in 1993 and has not applied for full professor or any other promotions in at least the past five years.[6] Thus, Plaintiff cannot assert a discrimination claim based any promotion decision.

Thus, all that is left is Plaintiff's claim of discrimination based on pay.

### 2. Plaintiff Cannot Establish A *Prima Facie* Claim For Discrimination On The Basis Of Pay.

For Plaintiff to establish a *prima facie* claim on the basis of pay, she must establish that others similarly situated faculty outside her protected class were treated more favorably. *See*

---

[4] The standard for an actionable adverse employment action to support a retaliation claim is different than for a discrimination claim. To establish an adverse employment action to support a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). TSU does not dispute that assignment of duties can constitute an adverse employment action for purposes of a retaliation claim. *Id.* at 70-71.

[5] Dkt. # 14 ¶ 4.8; Attach. 2, Jackson Depo. Exh. 14 (TSU-001319).

[6] Attach 1, Jackson Depo. 46:16-23; 130:20-131:13; Attach. 5, Jackson Interr. Resp. #10 (admitting that since 2007, Jackson has "not applied for other positions or promotions"); Attach. 6, TSU-001312 (EEOC Affidavit) & TSU001327-28 (EEOC letter noting no adverse employment action since Jackson has not applied for professor since 1993).

*Okoye*, 245 F.3d at 512-13. "To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." *Wheeler v. BL Development Corp.*, 415 F.3d 399, 406 (5th Cir. 2005); *see also Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 405–06 (5th Cir.1999) (holding that similarly situated means employees with the same position, qualifications, and pay rate).

Below is the salary information for the four Associate Professors in the Pharmacy Practice Department of COPHS as of September 27, 2010 (the date of TSU's response to the EEOC):[7]

| Name | Race | Age | National Origin | Salary |
|------|------|-----|----------------|--------|
| Cyril Abobo | Black[8] | 56 | Nigerian[9] | $82,143 |
| **Doris Jackson** | **Black** | **59** | **African-American** | **$77,092** |
| Ivy Chui | Asian | 33 | None disclosed | $79,500 |
| Lilly Cheung | Asian | 60 | None disclosed | $75,000 |

Plaintiff's salary is in the midpoint range of similarly situated faculty, as she is paid more than one of the other Associate Professors, Dr. Cheung, who is of a different race. As for Dr. Abobo, he is Black (like Plaintiff) and only 3 years younger than Plaintiff, which is insufficient to establish a *prima facie* age discrimination claim. *See Earle v. Aramark Corp.*, 247 Fed.Appx. 519, 523 (5th Cir.2007) ("The Fifth Circuit has held that four years is an insignificant age difference that is not sufficient to support a *prima facie* case of age discrimination.").

---

[7] Attach. 8, David Aff. ¶ 3; *see also* Attach. 6, TSU-001312 (EEOC Affidavit) & TSU-001578-86 (TSU position statement). Note that Dr. Osemene was not included, as she also receives compensation in connection with being the Department Chair.

[8] Dr. Abobo reported his race as "International," but he is Black. *Id.* at Attach. 6, TSU-001580 (TSU position statement).

[9] Attach. 1, Jackson Depo. 140:24-141:2.

Furthermore, Plaintiff has admitted that she is not alleging that Dr. Abobo was treated better than her because of his race, skin color, or national origin.[10]

As to merit raises and salary increases, Plaintiff was awarded a salary increase of approximately $10,000 in October 2008.[11] The COPHS did not award any merit increases or other pay raises to any Associate Professors from 2009 through January 11, 2010, the date Plaintiff filed her charge.[12] Thus, there is no evidence to support a prima facie claim of discriminatory merit pay or other pay raises.

In short, there is no evidence that Plaintiff was discriminated against in terms of her salary as an Assistant Professor on the basis of race, skin color, national origin or age. Her Title VII discrimination claim and her ADEA age discrimination claim should be dismissed.

### 3. Plaintiff Cannot Identify People Outside Her Protected Class Who Are Allegedly Treated More Favorably.

For Plaintiff to establish a *prima facie* discrimination claim, she must establish that other similarly situated faculty outside her protected class were treated more favorably. *See Okoye*, 245 F.3d at 512-13. The law is clear that a plaintiff cannot establish a *prima facie* where plaintiff alleges that people within the same protected class were treated more favorably, *See Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 Fed.Appx. 159, 162 (5th Cir. 2008) (holding plaintiff failed to establish *prima facie* claim where people purportedly treated more favorably were in same protected class); *See O'Brien v. Lucas Assocs. Personnel, Inc.*, 127 Fed. Appx. 702, 706 (5th Cir. 2005) ("In deposition, O'Brien averred that she was treated differently from both similarly situated male and female counterparts. This admission belies her claim that [the] decision to demote her was motivated by gender-based discriminatory animus."); *Arensdorf v.*

---

[10] Attach. 1, Jackson Depo. 33:21-34:7.
[11] Attach. 6, TSU-001582; *Compare* Attach. 7, Gill Aff. ¶ 2, Exh. 1 (TSU-000442, showing $67,091 for 2007) *to* Gill Aff. ¶ 3, Exh. 2 (TSU-000441, showing $77,092 for 2008).
[12] Attach. 6, TSU-001582 (TSU position statement); Attach. 8, David Aff. ¶ 4.

*Paulson*, Civ. A. No. H-06-3324, 2008 WL 4411597, at *4 (S.D. Tex. Sept. 29, 2008) (granting summary judgment to employer where plaintiff merely alleged that "both the males and the females received promotions before her."); *Felder v. Winn-Dixie Louisiana, Inc.*, 2004 WL 764189, at *6 (E.D. La. Apr. 7, 2004) (holding plaintiff failed to establish *prima facie* claim where people purportedly treated more favorably were in same protected class).

Here, Plaintiff, who self-describes as a "light-skinned" African American over 59 years old,[13] repeatedly testified that other faculty within the same protected classes upon which she claims discrimination were treated more favorably.[14] For example, when asked to identify which faculty were treated better than her based on skin color, Plaintiff identified five faculty members, some of whom allegedly had lighter skin color, some had the same skin color, and some had darker skin color.[15] Similarly, when asked to identify those faculty members who received discriminatory merit raises, Plaintiff identified faculty who were African American (like her) and faculty who were the same age or older than her, among others.[16] The following line of questioning regarding salaries summarizes Plaintiff's view that everyone was treated better than her, including those inside and outside her various protected classes:

> Q. Yes. My question is very simple, ma'am. You allege that other people received -- that you receive a lower salary and that your lower salary is discriminatory. My question is: Who in the college receives a higher salary that you allege is higher than yours for discriminatory reasons?
>
> A. You want me to give you names?
>
> Q. Yes, please.

---

[13] Attachment 2, Jackson Depo. Exh. 14.

[14] Plaintiff also alleges that Dr. Golda Leonard, a white American faculty member around her same age as Plaintiff, was treated more favorably with respect to promotions. Attach. 1, Jackson Depo. 23:17-25:13. Dr. Leonard would be in the same protected class on the basis of age, national origin and skin color, given that Plaintiff alleges that persons of darker skin color were treated more favorably. Attach. 2, Jackson Depo. Exh. 14. Plaintiff also alleges that Dr. Cyril Abobo, a black Nigerian faculty member around the same age as Plaintiff, was treated better than her. Attach 1, Jackson Depo. 41:13-17. Dr. Abobo would be in the same protected class on the basis of age and race.

[15] Attachment 1, Jackson Depo. 40:7-41:24.

[16] Attachment 1, Jackson Depo. 136:11-137:10.

A. Dr. Hayes, Dr. Abobo, Dr. Milton, Dr. Leonard, Dr. Osemene, Dr. Oyekan, Dr. Liang, Dr. Shivachar, Dr. Hunter, Dr. Mathur. And I probably missed a couple like most -- we just had, like, two or three new people come in; and I understand that their salaries are. For the last information -- that's all I have to say finished.

Q. Okay. And many of the people you identified are black, correct, but not all?

A. Yes, sir, yes.

Q. And what race do you consider yourself?

A. African-American.

Q. Okay. And I -- I've been using "black" because, to me, that is strictly race, whereas "African-American" also connotes national origin. So some of these individuals are also African-Americans. Is that true?

A. Yes.

Q. Some of these individuals have -- are black with lighter skin than you; is that correct?

A. Yes.

Q. And some of them are black with darker skin than you?

A. Yes.

Q. Some of these individuals are African-American and some are African and some are neither, correct?

A. All of the above.

Q. Uh-huh. Some are white?

A. Oh, yes.

***

Q. Okay. And some of these individuals are older than you, and some are younger than you; is that correct?

A. Yes.[17]

Because Plaintiff admits that people within her protected class were treated more favorably than her, she cannot establish a *prima facie* discrimination claim.

---

[17] Attachment 1, Jackson Depo. 127:19-129:5, 130:16-19.

### B.  Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation.

For Plaintiff to establish a *prima facie* claim of retaliation under Title VII, she must show: (1) that she engaged in protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Evans v. City of Houston*, 246 F .3d 344, 352 (5th Cir. 2001). The same burden-shifting applies in retaliation cases, such that if the employer offers a legitimate, non-retaliatory reason for its action, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real [] retaliatory purpose." *McCoy*, 492 F.3d at 557.

To establish an adverse employment action to support a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). The Supreme Court has emphasized that "it is important to separate significant from trivial harms," and that Title VII does not set forth "'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "[P]etty slights, minor annoyances, and simple lack of good manners" are insufficient to deter employees from bringing retaliation claims, and thus are not materially adverse. *Id.*

Furthermore, Plaintiff must rely on alleged adverse employment actions that occurred *after* the protected activity to allege retaliation. *See Cantu v. Vitol, Inc.*, Civ. A. No. H-09-0576, 2011 WL 486289, at *11 (S.D. Tex. Feb. 7, 2011) ("The law is clear that a discharge cannot be in retaliation for protected activity if the decision to discharge is made before the protected activity occurs.") (citing cases).

TSU does not question that Plaintiff engaged in protected activity when she filed her charge of discrimination on January 11, 2010.[18]  Thus, only adverse employment actions that occurred *after* January 11, 2010 can support Plaintiff's retaliation claim.  However, TSU does dispute that Plaintiff suffered any adverse employment actions or that there is any causal relationship between any alleged adverse action and her filing of a charge of discrimination.

### 1. Plaintiff Was Not Subject To Adverse Employment Actions After Filing Her Charge Of Discrimination.

As with her discrimination claim, Plaintiff is relying on purported adverse employment actions that cannot support her retaliation claim.  First, she alleges that her pay and rank are retaliatory.[19]  However, as described above, Plaintiff applied for and was denied full professorship in 1993, and has not made any applications for promotion since filing her charge upon which to base a retaliation claim.[20]  And as shown above, Plaintiff's salary after filing her charge in 2010 does not reflect any retaliatory employment action.[21]

Plaintiff also points to a purported "false charge of sexual harassment" that was filed against her as alleged retaliatory treatment.[22]  However, this incident occurred in 2006, approximately four years *before* Plaintiff filed her charge and well outside of the statute of limitations for her Title VII claim in any event.[23]

---

[18] Attachment 2, Jackson Depo. Exh. 14.
[19] Attachment 5, P.'s Interr. Resp. # 4 ("I am receiving less compensation and have less rank than many with nonexistent and questionable credientials.").
[20] Attach. 5, Jackson Interr. Resp. #10 (admitting that since 2007, Jackson has "not applied for other positions or promotions"); Attach. 6, EEOC Records Aff. & TSU-001327-28 (EEOC letter noting no adverse employment action since Jackson has not applied for professor since 1993); Attach. 1, Jackson Depo. 130:20-131:13..
[21] Attachment 8, David **Aff. ¶ 3-4.**
[22] Attachment 5, P.'s Interr. Resp. # 4.
[23] Attach. 1, Jackson Depo. 86:6-87:10; Attach. 7, Gill Aff. ¶ 4, Exh.3 (TSU-000466-67).

Plaintiff also makes vague allegations about humiliating emails, "denial of merit points in [her] annual evaluations," sick leave hours being taken away,[24] increasing works hours, denial of assignments to college and departmental committees, and "lecture dates and work schedules" being "arbitrarily changed to [her] detriment."[25]  Yet, Plaintiff could not identify the dates of such purported retaliatory actions, the persons who took such action, or any witnesses thereto.[26] "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'"  *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)).

Furthermore, Plaintiff alleged retaliatory actions are not sufficiently material to set forth a *prima facie* retaliation claim.  Indeed, the Fifth Circuit has repeatedly held that similar complaints of such things as poor evaluations, changes to work assignments, modified schedules, and rude behavior are not sufficient material to constitute retaliation.  *See Lushute v. Louisiana, Dept. of Social Services*, 2012 WL 1889684, at *2 (5th Cir. May 25, 2012) (holding that change to work schedule not materially adverse retaliation action); *Mitchell v. Snow*, 326 Fed.App'x. 852, 856 (5th Cir. 2009) (finding that lower-than-expected employment review "would not have dissuaded a reasonable employee from asserting discrimination"); *Barnett v. Boeing Co.*, 306 Fed.Appx. 875, 881 (5th Cir. 2009) (holding that assignment to different projects not adverse action; "Workers are often assigned to work on various projects within the scope of their employment."); *King v. Louisiana*, 294 Fed.App'x 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair

---

[24] Plaintiff has alleged that her Department Chair Dr. Osemene "tampered with" her sick leave hours for over five years, and therefore well before she engaged in any actionable protected activity.  Attach. 8, David Aff. ¶5, Exh. 1.
[25] Attachment 5, P.'s Interr. Resp. # 4, # 6.
[26] *Id.*

treatment do not constitute adverse employment actions as ... retaliation") (citations omitted); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed.App'x 437, 442 (5th Cir. 2007) (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination") (citation omitted); *Turner v. St. Luke's Episcopal Health System*, Civ. A. No. H-06-1668, 2008 WL 706709, at *16 (S.D. Tex. Mar. 14, 2008) (holding that evidence that supervisors raised their voice to plaintiff, were rude and did not talk to plaintiff not materially adverse employment actions).

Finally, Plaintiff claims in her complaint that she has been retaliated against by not being restored to her faculty position following FMLA leave.[27] However, it is without question that Plaintiff continues to be an Associate Professor in COPHS at TSU, and retuned back to work September 2012 for the Fall semester.[28] There is no factual support for her claim that she has been denied her faculty position at TSU.

## 2. Plaintiff's Own Admissions Defeat Any Suggestion Of Causation.

To establish a prima facie retaliation claim, Plaintiff must establish a causal link existed between the protected activity and the adverse action. *Evans*, 246 F .3d at 352. "To defeat a motion for summary judgment, a plaintiff must demonstrate a conflict in substantial evidence on [the] ultimate issue of 'but for' causation. Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. Temporal proximity, standing alone, is not enough." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012) (quotation marks and citation omitted).

---

[27] Dkt. 14, Am. Compl. ¶ 4.13.
[28] Attach. 1, Jackson Depo. 175:2-9, 176:21-178:1, Attach. 2, Exh. 19. Plaintiff objected to her teaching assignments and alleged that she was not given her preference of assignments based on her seniority, per TSU policy. *Id.*

Here, Plaintiff's own admissions defeat any suggestion of causation. Plaintiff alleges that these purportedly retaliatory actions occurred to her "because [she] raised the question about faculty with nonexistent and questionable credentials and/or licensure."[29] She goes on to state, "I received retaliation because I questioned that Dr. Hayes received a Ph.D. degree in Pharmacology from the University of Houston in 1984."[30] Plaintiff further elaborated on this in her depositions:

> Q. Is part of the reason you're bringing this lawsuit because you think Dr. Hayes doesn't have a Ph.D.
>
> A. Not just Barbara Hayes. Barbara Hayes and other faculty.
>
> Q. Is part of the reason you're bringing this lawsuit because you think Dr. Hayes doesn't have a Ph.D.?
>
> A. Yes, sir.[31]

These admissions defeat any suggestion that the purported retaliation occurred because Plaintiff filed her charge of discrimination or otherwise complained of unlawful discrimination. Furthermore, Plaintiff cannot offer any evidence that any of the persons responsible for the alleged retaliation was even aware that she had filed a charge of discrimination. *See Everett v. Central Mississippi, Inc. Head Start Program*, 444 Fed. Appx. 38, 46 (5th Cir. 2011) ("the plaintiff must present evidence that the final decisionmaker with respect to the adverse employment action was aware of the plaintiff's protected conduct."). This is another reason her retaliation claim fails.

### 3. TSU Had A Legitimate, Non-Retaliatory Reason For Any Purportedly Retaliatory Action.

One of the few specific instances of alleged retaliation by Plaintiff is her claim that TSU took away her access to her computer and electronic mail while she was on FMLA leave.[32]

---

[29] Attachment 5, P.'s Interr. Resp. # 4.
[30] Attachment 5, P.'s Interr. Resp. # 4.
[31] Attach. 1, Jackson Depo. 82:12-21; *see also* Jackson Depo. 134:11-20 (alleging pay difference on the basis of credentials, not race).

However, TSU had a legitimate, non-retaliatory reason for this action. In accordance with TSU practice regarding email access for staff on leave from the University, Plaintiff's email access was turned off during her extended FMLA leave. Upon her return to work, her access was restored.[33] Furthermore, restricting an employee's computer access while on extended FMLA leave is not sufficiently material to constitute a retaliatory adverse employment action. *See Bender v. City of Clearwater*, 2006 WL 1046944, at *13 (M.D. Fla. Apr. 19, 2006) (holding that denial of access to email while on FMLA leave not adverse employment action for FMLA retaliation claim).

In summary, Plaintiff's retaliation claim is based primarily on vague allegations that do not rise the level of adverse employment actions under the *Burlington Northern* standard. Furthermore, Plaintiff admits that the alleged retaliatory actions were in response to disputes with her departmental administrators on faculty qualifications, and not in retaliation for any protected activity covered by Title VII. This alone defeats a *prima facie* claim of retaliation. Finally, TSU had legitimate, non-retaliatory reasons for its actions. For these reasons, TSU is entitled to summary judgment on Plaintiff's retaliation claim.

### C. Plaintiff's First Amendment Claim Against TSU Is Subject To Dismissal.

As set forth in TSU's Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff has not presented a plausible claim for First Amendment retaliation, as that claim can only be asserted against an individual state actor pursuant to Section 1983. (Dkt. # 15, D.'s Motion to Dismiss at 7-9.) In response, Plaintiff offered no authority supporting such a claim directly against TSU. Rather, Plaintiff argued that she should be allowed discovery to identify the TSU administrators responsible for the actions against her, if any. (Dkt. # 19, P.'s Resp. at 5.) Setting

---

[32] Attachment 5, P.'s Interr. Resp. # 4.
[33] Attachment 9, Rector Affidavit ¶ 3.

aside the fact that the deadline to amend pleadings had already passed at the time Plaintiff filed her First Amended Complaint (Dkt. # 13, Sch. Order), Plaintiff has now had months to conduct discovery, but she has not sought to amend her complaint to name any TSU administrators with regard to her First Amendment claim.

Because TSU cannot be held liable for Plaintiff's First Amendment claim, no substantive response is necessary. Plaintiff's First Amendment claim should be dismissed. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994). To the extent necessary, TSU hereby incorporates by reference the arguments in its Motion to Dismiss supporting dismissal of Plaintiff's First Amendment claim.

Even if Plaintiff could assert a First Amendment claim directly against TSU, there is no evidence to support such a claim here. To establish a constitutional claim for First Amendment retaliation, four elements must be shown: (1) that plaintiff "suffered an 'adverse employment decision'"; (2) that the plaintiff's "speech involved a 'matter of public concern'"; (3) that the plaintiff's "'interest in commenting on matters of public concern ... outweighs the [d]efendant's interest in promoting [workplace] efficiency'"; and (4) that the plaintiff's speech motivated the defendant's action. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (quoting *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (holding memorandum written pursuant to employee's official duties not protected). Thus, where an employee's speech concerns internal matters of the state agency or university, that speech does not fall within the rubric of "public concern." *See Connick v. Myers*, 461 U.S. 138, 148 (1983) (internal communications regarding employee transfers, office morale and the

like not matter of public concern); *Dorsett v. Bd. of Trustees for State Colleges & Univs.*, 940 F.2d 121, 123-24 (5th Cir. 1991) (professor's speech "concerning teaching assignments, pay increases, administrative matters, and departmental procedures" not matter of public concern); *Janmeja v. La. State Univ.*, 116 F.3d 475, 1997 WL 255550, at *2 (5th Cir. Apr. 14, 1997) (professor's letter attributing attrition rate in academic program to inadequate preparation of incoming students not matter of public concern).

TSU is not aware of any "public" speech by Plaintiff that she alleges had any connection to any adverse employment action. Moreover, TSU is not aware of any evidence that any such speech motivated any employment action related to Plaintiff. Plaintiff's First Amendment claim should be dismissed for this additional reason. *Turner*, 476 F.3d at 343 ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'").

### D.     TSU Is Immune From Plaintiff's Self-Care FMLA Claim.

Similarly, TSU moved to dismiss Plaintiff's FMLA claim on the ground that Plaintiff had not alleged facts showing a waiver of TSU's sovereign immunity. (Dkt. # 15, D.'s Motion to Dismiss at 10-11.) In particular, TSU moved for dismissal due to Plaintiff's failure to allege whether her claims were self-care claims, for which sovereign immunity has *not* been waived, or were family-care claims, for which sovereign immunity has been waived. (*Id.*, citing cases.) Plaintiff offered no substantive response to these argument.

The Supreme Court has made it clear that that Congress did not validly abrogate the State's sovereign immunity when it passed the FMLA's self-care provision. *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1338 (2012); *see also Nelson v. University of Tex.*, 535 F.3d 318 (5th Cir. 2008). Following discovery in this case, it is clear that Plaintiff's FMLA claims are self-care claims from which TSU is immune. As reflected in the FMLA leave form

completed by her physician on February 14, 2012, Plaintiff took FMLA leave in Spring of 2012 to recover from a thyroid condition.[34]  Plaintiff continued to seek leave through the semester related to her own medical condition (not to care for any of family members).[35]

Because Plaintiff took FMLA leave to care for herself, her claims against TSU are barred by sovereign immunity and should be dismissed for lack of jurisdiction.  *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1338 (2012).  To the extent necessary, TSU hereby incorporates by reference the arguments in its Motion to Dismiss supporting dismissal of Plaintiff's FMLA claim.

Even if Plaintiff's claim were not barred by sovereign immunity, Plaintiff's allegation that TSU failed "to restore [her] to her position following leave under the FMLA" has no basis in fact, as she has returned to work and is currently performing her duties for the Fall 2012 semester.[36]  Her claim should be dismissed for this additional reason.

### E.     Plaintiff's Claim Under The Texas Public Information Act Is Subject To Dismissal.

Finally, as explained in TSU's Motion to Dismiss, Plaintiff's claim under the Texas Public Information Act ("TPIA"), TEX. GOV'T CODE Ch. 552, should be dismissed.  (Dkt. #15 at 12-13.)  In her response, Plaintiff did not offer any authority supporting her TPIA claim.  (Dkt. # 19.)  To the extent necessary, TSU hereby incorporates by reference the arguments in its Motion to Dismiss supporting dismissal of Plaintiff's TPIA claim.

## III.     CONCLUSION

Defendant Texas Southern University respectfully requests that this Court grant this Motion for Summary Judgment against Plaintiff, dismiss Plaintiff's claims, order that Plaintiff

---

[34] Attachment 3, Simms Depo. 29:9-25, Attachment 4, Exh. 1 pp. 410-413 (FMLA form).
[35] Attach. 3, Simms Depo. 37:23-38:18, Attachment 4, Exhs. 3 & 4.
[36] Attach. 1, Jackson Depo. 175:2-9, 176:21-178:1, Attach. 2, Exh. 19.  Plaintiff objected to her teaching assignments for Fall 2012 and alleged that she was not given her preference of assignments based on her seniority, per TSU policy. *Id.*

take nothing by her action, and award TSU such further relief to which it is entitled.  A proposed order to this effect is attached to this motion.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES
Chief, General Litigation Division


/s/ Darren G. Gibson
**DARREN G. GIBSON**
**Attorney-in-charge**
Texas Bar No. 24068846
Southern District ID No. 1041236
Darren.Gibson@oag.state.tx.us
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

***ATTORNEYS FOR DEFENDANT***

# CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

David T. Lopez
DAVID T. LOPEZ & ASSOCIATES
3900 Montrose Blvd.
Houston, Texas 77006-4959
dtlopez@loopezlawfirm.com

/s/ Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General