IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DORIS M. JACKSON, Pharm.D., § | |
|     Plaintiff, § | |
| § | Civil Action No. 4:11-CV-4092 |
| v. § | |
| § | |
| TEXAS SOUTHERN UNIVERSITY, § | |
| SUNNY E. OHIA, BARBARA E. § | |
| HAYES, INYANG N. OSEMENE, and § | |
| CYRIL V. ABOBO, § | |
|     Defendants. | |

**INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE MELINDA HARMON:

Now come Defendants Sunny E. Ohia, Barbara E. Hayes, Inyang N. Osemene, and Cyril V. Abobo (collectively, the "Individual Defendants") and file this Motion to Dismiss Plaintiff's Second Amended Complaint. The Individual Defendants file this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully show the Court as follows:

### I.   PROCEDURAL BACKGROUND AND ALLEGED FACTS

On March 6, 2013, Plaintiff filed her Second Amended Complaint, which not only names TSU but adds as named defendants Drs. Ohia, Hayes, Osemene, and Abobo, all of whom are administrators and faculty at TSU and who are sued in their individual capacities. (Dkt. 36 ¶¶ 3.3-3.6.) On March 26, 2013, before any of the Individual Defendants were served, the Court granted Plaintiffs' motion to stay this case following the death of the Plaintiff and ordered a 60-day stay of this case, with TSU's motion to dismiss to be calendared 20 days after the expiration of the stay. (Dkt. 38, 39.) Since the stay was entered, the undersigned counsel has been retained

1

by the Individual Defendants. The Individual Defendants file this motion to dismiss so that once the stay has expired or has been vacated, the response deadline for this motion will correspond with Plaintiff's response deadline for TSU's motion to dismiss.

As for Plaintiff's claims against the Individual Defendants, Plaintiff asserts a First Amendment retaliation claim against Drs. Ohia, Hayes, and Osemene under 42 U.S.C. § 1983 ("Section 1983"). (*Id.* ¶ 5.) This claim is based on Plaintiff's purported speech to the TSU Board of Regents relating to an "internal dispute regarding the operation of the college" relating to the credentials and ability of faculty and administrators, treatment of students, and accreditation of the pharmacy program. (*Id.* ¶¶ 4.8-4.20.) Plaintiff alleges that Dr. Osemene, with the "acquiescence and participation" of Drs. Ohia and Hayes, allegedly made retaliatory decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures with the intent of pressuring Plaintiff to resign. (*Id.* ¶ 4.25.) In addition, Plaintiff asserts a common law assault claim against Dr. Abobo, an Associate Professor in the COPHS. (*Id.* ¶¶ 3.6, 8.) The alleged assault occurred on TSU's campus in the presence of faculty, students, and administrators. (*Id.* ¶¶ 4.38-4.35.)

For the reasons stated below, Plaintiff has failed to state a plausible cause of action against any of the Individual Defendants. Plaintiff's claims against the Individual Defendants should be dismissed under Rule 12(b)(6).

## II.   ARGUMENT AND AUTHORITY

When deciding a motion under Rule 12(b)(6), "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000)). To state a valid claim for relief, a plaintiff is required to

2

meet the pleading standard set forth in Rule 8(a)(2) of the Federal Rule of Civil Procedure, which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quoting FED. R. CIV. P. 8(a) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the Court must accept the specific factual allegations in the pleadings as true when deciding a motion to dismiss, *Hughes*, 278 F.3d at 420, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009).

Here, Plaintiff has failed to meet the minimum pleading standard as to any of her claims against the Individual Defendants. For the reasons set forth below, these claims should be dismissed.

### A. Plaintiff's First Amendment claim lacks sufficient facts to meet the *Twombly* plausibility standard.

Plaintiff has failed to meet the minimum pleading requirements as to her First Amendment retaliation claim under Section 1983 against Drs. Ohia, Hayes, and Osemene. To establish a constitutional claim for First Amendment retaliation, four elements must be shown: (1) that plaintiff "suffered an 'adverse employment decision'"; (2) that the plaintiff's "speech involved a 'matter of public concern'"; (3) that the plaintiff's "'interest in commenting on matters of public concern ... outweighs the [d]efendant's interest in promoting [workplace] efficiency'"; and (4) that the plaintiff's speech motivated the defendant's action. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (quoting *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)).

3

For First Amendment retaliation claims under Section 1983, an adverse employment action is limited to "ultimate employment decisions" such as discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000).[1] As the Fifth Circuit stated in *Breaux*:

> This court has declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech. The reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in relatively trivial matters. For example, in the education context, this court has held that decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation.

*Breaux*, 205 F.3d at 157 (quotations and citations omitted).

Here, the alleged retaliatory actions cited by Plaintiff include requests to retire, discouraging attempts to secure promotion, lower compensation relative to peers, disqualification from service on committees and other academic activities, personal disparagement, and heavier teaching loads. (Dkt. 36 ¶ 4.22.) None of these actions constitute "ultimate employment decisions" that can constitute an adverse employment action for a First Amendment claim. Rather, they are "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures" that "do not rise to the level of a constitutional deprivation." *Breaux*. 205 F.3d at 157. "Of all fields that the federal courts should hesitate to invade and take over, education and faculty appointments at the university level are probably the least suited for federal court supervision." *Dorsett v. Bd. of Trustees for State Colleges & Univs.*,

---

[1] "[B]ecause the Fifth Circuit has not yet formally applied *Burlington* to First Amendment retaliation claims, *see DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009), we will apply the *Breaux* standard to assess the alleged adverse employment action." *Clancey v. City of College Station*, 2011 WL 335148, at *5 (S.D.Tex. Jan. 31, 2011) (Ellison, J.). The reasoning of *Clancey* is particularly apt here given the specific concerns related to expanding Section 1983 liability in the education context expressed in *Breaux*.

4

940 F.2d 121, 124 (5th Cir. 1991) (quotations omitted).[2] For this reason, Plaintiff's First Amendment claim fails.

Furthermore, Plaintiff cannot meet the second element of a First Amendment retaliation claim, because her speech did not involve a matter of public concern. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (holding memorandum written pursuant to employee's official duties not protected). Similarly, where a faculty member's speech concerns internal matters of the state university, rather than matters regarding potential wrongdoing or a breach of the public trust, that speech does not fall within the rubric of "public concern." *See Connick v. Myers*, 461 U.S. 138, 148 (1983) (internal communications regarding employee transfers, office morale and the like not matter of public concern); *Dorsett v. Bd. of Trustees for State Colleges & Univs.*, 940 F.2d 121, 123-24 (5th Cir. 1991) (professor's speech "concerning teaching assignments, pay increases, administrative matters, and departmental procedures" not matter of public concern); *Janmeja v. La. State Univ.*, 116 F.3d 475, 1997 WL 255550, at *2 (5th Cir. Apr. 14, 1997) (professor's letter attributing attrition rate in academic program to inadequate preparation of incoming students not matter of public concern).

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark–and certainly every criticism directed at a public official–would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

---

[2] "In public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms." *Dorsett v. Bd. of Trustees for State Colleges & Univs.*, 940 F.2d 121, 123 (5th Cir. 1991).

*Connick*, 461 U.S. at 149.

Here, Plaintiff alleges that she engaged in speech relating to an "internal dispute regarding the operation of the college," which included credentials and ability of certain faculty and administrators, faculty salaries, treatment of students, the accreditation of the pharmacy program, and student dismissals. (Dkt. 36 ¶¶ 4.8, 4.11, 4.16, 4.18.) Such matters relate to the internal administration of the COPHS and do not reach the level of potential wrongdoing or a breach of the public trust. *Dorsett*, 940 F.2d at 123-24. Furthermore, Plaintiff's alleged speech took place in the forum of a Board of Regents meeting regarding the administration of the COPHS, which further suggests the speech was not a matter of public concern. *See id.* at 125 ("Dorsett did not direct his complaints to anyone outside the university.").

The final element of a First Amendment retaliation claim is that that the plaintiff's speech motivated the defendant's allegedly retaliatory action. *Beattie*, 254 F.3d at 601. Here, Plaintiff has not alleged facts that would even suggest that a plausible retaliatory motive. For example, Plaintiff does not allege when her purported speech to the TSU Board occurred or when the alleged retaliatory actions occurred. (Dkt. 36 ¶¶ 4.14, 4.16, 4.22, 4.23.) As a result, it is impossible to determine whether her purported speech even preceded the allegedly retaliatory actions, much less if the speech was sufficient close to plausibly suggest a causal nexus. *See Barkley v. Singing River Elec. Power Ass'n.*, 433 Fed.Appx. 254, 260 (5th Cir. 2011) ("temporal proximity must be very close to show causation."). Similarly, Plaintiff has not even alleged that Drs. Ohia, Hayes or Osemene were even aware of her protected activity when they took the allegedly retaliatory actions. And even if she had, that by itself, would be insufficient to create an inference of causal connection. *See Houston v. EBI Companies*, 53 F.3d 1281, 1995 WL 295897, at *5 (5th Cir. Apr. 21, 1995) ("An employer's knowledge of a plaintiff's participation in a

6

protected activity, without more, is insufficient to show a causal connection between the plaintiff's participation in the activity and the adverse employment action."). Finally, Plaintiff has not alleged that any of the individual defendants made any disparaging comments about her purported speech to the Board. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (holding that disparaging comments about plaintiff's filing of EEOC charge evidence of retaliation).

In short, Plaintiff has not alleged any facts suggesting a plausible First Amendment retaliation claim against any of the Individual Defendants, and those claims should be dismissed. *See Charles v. Cockrell*, 202 Fed. Appx. 48 (5th Cir. 2006) ("Charles fails to state a claim for retaliation, because she has neither supplied evidence of motivation nor adequately alleged a chronology of events that would allow a plausible inference of retaliation.").

### B. Plaintiff has failed to plead facts to defeat the Individual Defendant's qualified immunity.

Even if Plaintiff could somehow assert a cognizable First Amendment claim against Drs. Ohia, Hayes, and Osemene, Plaintiff has failed to allege facts to defeat their qualified immunity to such claims. Qualified immunity works to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Indeed, the Supreme Court has recognized that qualified immunity is not merely an affirmative defense, but also "a limited entitlement not to stand trial or face the other burdens of litigation." *Iqbal*, 129 S.Ct. at 1946 (quotations omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (holding that qualified immunity intended to protect government officials from "the burdens of such pretrial matters as discovery as inquiries of this kind can be peculiarly disruptive of effective government.") (quotations omitted).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court articulated a two-step sequence for resolving government officials' qualified immunity claims. "*Saucier* required that lower courts consider first, whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law, and second, if a violation has been alleged, whether the right was clearly established at the time of the alleged government misconduct." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (internal citations and quotation marks omitted).[3] "The relevant, dispositive inquiry in determining whether a right is clearly established [under the second step of the qualified immunity inquiry] is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The objective reasonableness of an officer's belief that his conduct was lawful is a question of law, not fact. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir.2005).

As described above, Plaintiff's speech did not involve a matter of public concern. Thus, even if Plaintiff were subject to retaliation for that speech (which the Individual Defendants deny), such actions would not amount to a violation of a right that was "clearly established" at the time. Given the state of the law of regarding workplace speech, it would not be clear to an objectively reasonable officer in the shoes of the Individual Defendants that Plaintiff's alleged speech to the TSU Board of Regents relating to an "internal dispute regarding the operation of the college" addressed a matter of public concern such that it would be protected by the First Amendment. *See Dorsett*, 940 F.2d at 123-25.

---

[3] In *Pearson v. Callahan*, the Court reconsidered the *Saucier* procedure, determined that "while the [two-step] sequence ... is often appropriate, it should no longer be regarded as mandatory," and gave lower courts "permi[ssion] to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

Furthermore, in *Iqbal v. Ashcroft*, 129 S.Ct. 1937 (2009), the Supreme Court made it clear that, to satisfy Rule 8 pleading requirements to defeat qualified immunity, a plaintiff asserting Section 1983 claims "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 1948. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 1950. (quoting Fed. R. Civ. P. 8(a)(2)). For example, to state a claim of discrimination "based on a violation of a clearly established right" necessary to defeat qualified immunity, a plaintiff "must plead sufficient factual matter to show that" each defendant acted "not for a neutral [] reason but for the purpose of discrimination on the basis of race, religion or national origin." *Id.; see also Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) ("In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race.").[4]

Thus, to assess whether Plaintiff has plead a claim to defeat each Individual Defendant's qualified immunity, the allegations against Drs. Ohia, Hayes, and Osemene must be addressed individually. Plaintiff alleges that Dr. Osemene, "with the acquiescence and participation of" Drs. Ohia and Hayes, subjected her to First Amendment retaliation through a variety of actions, such as requesting that she retire, discouraging her attempts to secure promotion, paying her lower compensation than she should have received, and assigning her a disproportionately

---

[4] *See also Miller v. Harris County*, 2011 WL 4456094, at *20-*21 (S.D.Tex. Sept. 22, 2011) (dismissing Section 1983 retaliation claim under the *Twombly / Iqbal* standard); *Moini v. Univ. of Tex.at Austin*, 2011 WL 90472, at *11-*13 (W.D.Tex. Jan. 10, 2011) (dismissing Section 1983 claims against individuals for failure to plead facts to defeat qualified immunity).

9

greater teaching load. (Dkt. 36 ¶ 4.22.) Plaintiff also alleges that the three Individual Defendants subjected her to "public demeaning, ridicule and insults." (*Id.* ¶ 4.24.)

However, there are no alleged facts to plausibly suggest that each of these individuals took any alleged retaliatory action with knowledge of Plaintiff's alleged speech, much less with the necessarily retaliatory intent to support a knowing violation of the law to defeat qualified immunity. And as to Drs. Ohia and Hayes, there are no specific allegations against them, other than their "acquiescence and participation" in Dr. Osemene's decisions. (*Id.* 4.25.) Such allegations fail to describe how each individual, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. Indeed, the only specific allegation against any of these three Individual Defendants is that Dr. Osemene "repeatedly stated to Dr. Jackson that Dr. Jackson is too old to serve on the faculty and must retire." (Dkt. 36 ¶ 4.24.) If anything, this allegation suggests a discriminatory intent on the basis of age, not a retaliatory intent on the basis of Plaintiff's alleged speech.

Simply put, Plaintiff's Second Amended Complaint is bereft of specific allegations against Drs. Ohia, Hayes, and Osemene to support Plaintiff's First Amendment claim, much less sufficient allegations to defeat their qualified immunity defense.

> C. **Plaintiff's assault claim against Dr. Abobo is barred by Texas Tort Claims Act section 101.106(f).**

Plaintiff asserts a common-law claim of assault against Dr. Abobo, a COPHS faculty member, based on events at TSU that allegedly occurred in the presence of other faculty, students, and TSU administrators. (Dkt. 36 ¶¶ 4.35-4.38.) However, this claim is barred by the Texas Tort Claims Act ("TTCA").

The TTCA includes a strict "Election of Remedies," which requires "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the

Tort Claims Act or proceeding against the employee alone." *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008); *see also* TEX. CIV. PRAC. & REM. CODE § 101.106. This provision "narrows the issues for trial and reduces delay and duplicative litigation costs." *Garcia*, 253 S.W.3d at 657.

In particular, Section 101.106(f) applies in suits against a governmental employee (such as this one), and it states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f). Furthermore, under section 101.106(f), suit "could have been brought" under the TTCA against the governmental entity regardless of whether the TTCA waives immunity from suit for such claims. *Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011); *see also Garcia*, 253 S.W.3d at 659 ("all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106."). As a result, Section 101.106(f) effectively "foreclose(s) suit against a government employee in his individual capacity" for tort claims "if he was acting within the scope of employment." *Franka,* 332 S.W.3d at 382. Such claims must be brought against the state agency, if at all, regardless of whether that entity is immune from such claims.

The question of scope of employment "encompasses two inquiries: whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time." *Anderson v. Bessman*, 365 S.W.3d

11

119, 124 (Tex. App.–Houston [1st Dist.] 2011, no pet.). The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5). Furthermore, "[a]n official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994) (finding that on-duty police officers, pursuing suspect in squad car, did not act outside scope of authority in driving without regard for safety of others).

It is clear from the face of the complaint that Dr. Abobo was acting in the general scope of employment when he allegedly assaulted Plaintiff. First, Plaintiff admits that Dr. Abobo was an Associate Professor in the COPHS at all relevant times. (Dkt. 36 ¶ 3.6.) Second, the alleged assault occurred on TSU's campus in the presence of faculty, students, and administrators. (*Id.* ¶ 4.38.) The only plausible conclusion to be reached is that Dr. Abobo was "being in and about the performance of a task lawfully assigned" to him as an Associate Professor when this alleged act occurred. TEX. CIV. PRAC. & REM. CODE § 101.001(5).[5] Even if Dr. Abobo assaulted Plaintiff based on a personal or improper motive, those actions would still be within the scope of Dr. Abobo's employment for purposes of section 101.106(f). *See Bessman*, 2011 WL 5429069, at *5 ("So long as it falls within the duties assigned, an employee's conduct is 'within the scope of employment,' even if done in part to serve the purposes of the employee or a third person.") (citing cases).

---

[5] Although it will become clear (should this case proceed to discovery) that the events related to the alleged assault took place while both Plaintiff and Dr. Abobo were proctoring an exam, Defendants rely solely on the allegations in the complaint for purposes of this motion.

12

In short, the assault claim against Dr. Abobo is based on conduct within the general scope of his employment and could have been brought under the TTCA against TSU.[6] As a result, the assault claim against Dr. Abobo in his individual capacity should be dismissed pursuant to section 101.106(f).

### III.   CONCLUSION

The Individual Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss all of the claims asserted against them in Plaintiff's Second Amended Complaint. A proposed order to this effect is attached to this motion.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES
Chief, General Litigation Division

---

[6] To be clear, TSU would be immune from Plaintiffs' tort claims under the TTCA. However, Texas law is clear that all tort claims are considered to be "under" the TTCA for purposes of section 101.106, regardless of whether the governmental unit is immune from such claims. *Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011); *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

/s/ Darren G. Gibson
**DARREN G. GIBSON**
**Attorney-in-charge**
Texas Bar No. 24068846
Southern District ID No. 1041236
Darren.Gibson@oag.state.tx.us
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

David T. Lopez
DAVID T. LOPEZ & ASSOCIATES
3900 Montrose Blvd.
Houston, Texas 77006-4959
dtlopez@loopezlawfirm.com

/s/ Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General