IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DORIS M. JACKSON, Pharm. D.,[1]  §
                                §
              Plaintiff,        §
                                §
VS.                             §   CIVIL ACTION H-11-4092
                                §
TEXAS SOUTHERN UNIVERSITY,      §
SUNNY E. OHIA, BARBARA E. HAYES,§
INYANG N. OSEMENE, and CYRIL V. §
ABOBO,                          §
                                §
              Defendants.       §

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, alleging in Dr. Doris M. Jackson's Second Amended Complaint age discrimination under the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code § 21.051, denial of promised medical leave benefits under Texas statutory and common law, breach of contract and promissory estoppel, retaliation in violation of her rights to free expression under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and common-law assault, are the following motions: (1) Texas Southern University's ("TSU's) motion to dismiss (instrument #37) and (2) Individual Defendants' (Doctors Sunny E.

---

[1] Original Plaintiff Doris M. Jackson, Pharm. D., recently passed away, and her spouse, Lewis E. Jackson, has been sub-stituted as Plaintiff in this suit.  When the Court refers to "Plaintiff" in this Opinion and Order, it means Doris M. Jackson.

-1-

Ohia, Barbara E. Hayes, Inyang N. Osemene, and Cyril A. Abobo's)[2] motion to dismiss (#41).

## I.  Standards of Review

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, No. 11-10264, 2011 WL 3363872, *1 (5th Cir. Aug. 4, 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3).  If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).  The reasons behind this practice are to

---

[2] Doctors Ohia, Hayes, Osemene, and Abobo are sued in their individual capacities.  At all times material to this suit, Dr. Ohia was Provost and Vice President for Academic Affairs and Research at TSU; Dr. Hayes was Dean of the College of Pharmacy and Health Sciences at TSU, where she is now a professor of Pharmacology; Dr. Osemene was the Chair of the Department of Pharmacy Practice in the College of Pharmacy and Health Sciences at TSU; and Dr. Abobo was an associate professor of pharmacy practice in the College of Pharmacy and Health Sciences of TSU. Plaintiff states that the Individual Defendants were Plaintiff's administrative supervisors and exercised influenced control over her faculty rank, compensation, and duty assignments.

preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'" *Id.*, *citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter jurisdiction exists, here the plaintiff, must bear the burden of proof for a 12(b)(1) motion. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial

attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Such is the case here. In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3, citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).[3]

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts

---

[3] If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id.*, citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive

a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).   "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).   The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"  *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court, observed that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b).  *Iqbal*, 129 S. Ct. at 1949.   The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal.  *Collins v. Morgan*

*Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

"Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

## II.  Substantive Law

### A.  Eleventh Amendment and TSU's Sovereign Immunity

Because at times the Second Amended Complaint references federal causes of action even though it asserts that Plaintiff's claims are brought under state law, the Court addresses the Eleventh Amendment and sovereign immunity with respect to both.

The Eleventh Amendment of the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.C.A. Const. Amend. XI.  In *Hans v. Louisiana*, 134 U.S. 1, 10 (1890), the Supreme Court held that despite the literal language of the Eleventh Amendment, a federal court also cannot entertain a suit brought by a citizen against his own State.  It is black letter law that the Eleventh Amendment "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir.

2002).   The State's consent must be clear and unequivocal. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).   While Congress has the power to abrogate Eleventh Amendment immunity with regard to rights protected by the Fourteenth Amendment,[4] the Supreme Court has also required "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Id., citing Quern v. Jordan*, 440 U.S. 332, 342 (1979)(holding that 42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity).[5]

Moreover, "[i]t has long been settled that the reference to actions 'against one of the United States encompasses not only actions in which a State is actually named as a defendant, but also certain actions against state agents and state instrumentalities." *Regents of the University of California v. Doe*, 519 U.S. 425. 429 (1997).   "An action by a citizen against a state official in his *official capacity* is an action against the State and is barred by

---

[4] Congress has abrogated sovereign immunity under the Fourteenth Amendment in enacting both Title VII and the Equal Pay Act.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 453, 457 (1976)(Title VII)' *Usery v. Charleston Cnty. Sch. Dist.*, 558 F.2d 1169, 1171-72 (4th Cir. 1977)(Equal Pay Act).

[5]  In addition to the exceptions of consent and abrogation, suits under the fiction of *Ex parte Young*, 209 U.S. 123 (1908), are also not immune from suit in federal court.  *See, e.g., Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994); *Hill v Kemp*, 478 F.3d 1236, 1256-57 (10th Cir. 2007).

the Eleventh Amendment, subject only to the limited exception permitted by *Ex Parte Young*, 209 U.S. 123 . . . (1908)(action seeking prospective relief against state officer permissible against ongoing constitutional violation)." *Henley v. Simpson*, 527 Fed. Appx. 303, 305 (5th Cir. June 12, 2013).[6]

A suit against a state official in his individual capacity does not always implicate the Eleventh Amendment. *Id., citing Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir. 1999)(regarding indemnification statutes, simply because the state will pay judgments when an officer is sued in his individual capacity does not extend Eleventh Amendment protections around the officer."). The Eleventh Amendment does not bar "monetary relief for past harms when the state official is sued in his individual capacity and will be personally liable for the judgment." *Id.* at 305-06*, citing Hafer v. Melo*, 502 U.S. 21 (1991), and *Kentucky v. Graham*, 473 U.S. 159 (1985). "'[W]hen the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'" *Id.* at 306, *quoting Ford Motor Co. v. Dep't of Treas. of State of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*,

---

[6] The Court notes that any claim for prospective injunctive relief for Plaintiff's claims is mooted by her death.

535 U.S. 613 (2002)(holding that a State waives its Eleventh Amendment immunity by removing a suit to federal court). Thus "the general rule [is] that the Eleventh Amendment does not ordinarily immunize a public official from an action against him in his individual capacity," but that rule is qualified "by acknowledging the fact specific nature of the real-party-in-interest inquiry." *Henley*, 527 Fed. Appx. at 306, *citing Modica v. Taylor*, 465 F.3d 174, 183-84 (5ᵗʰ Cir. 2006).

Under Texas law, state universities, including Texas Southern University, "'are agencies of the State and enjoy sovereign immunity.'" *Taylor v. Texas Southern University*, Civ. A. No. 4:12-CV-01975, 2013 WL 3157529, at *3-4 (S.D. Tex. June 20, 2013)(concluding that, "for Eleventh Amendment purposes, a suit against a state agency or university is a suit against the state")(and cases cited therein, including *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984)). A state's sovereign immunity bars suits for monetary damages against state officers in their official capacities. *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5ᵗʰ Cir. 2004). The "'mere receipt of federal funds does not establish that a State has consented to suit in federal court.'" *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985).

Title 42 U.S.C. § 1983, which "provides injured plaintiffs with a cause of action when they have been deprived of federal

rights under color of state law,"[7] states,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must "'(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Doe*, 153 F.3d at 215, *quoting Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1995).   Here Plaintiff asserts Defendants violated her rights under the Fifth Amendment.

Texas has not waived sovereign immunity for § 1983 monetary claims against TSU or its employees in their official capacities. *Dittmer v. Texas Southern Univ.*, Civ. A. No. 10-182, 2010 WL 3119925, at *4 (S.D. Tex. Aug. 5, 2010).   Moreover, regarding a claim for impeding the right to free expression under the First Amendment and § 1983, a state university is not a "person" for purposes of § 1983 and therefore not a proper defendant to such a claim.  *Taylor*, 2013 WL 3157529, at *4, *citing Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 & n. 10 (1989)(holding that

---

[7] *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

"neither a state or persons acting in their official capacities are 'persons' under section 1983," although state officials in their official capacities when sued for injunctive relief, are 'persons' under section 1983),[8] and *Scooter v. Univ. Of Tex. San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007).

A waiver of sovereign immunity by Texas in its own state courts does not constitute a waiver of its Eleventh Amendment immunity in federal courts. *Taylor*, 2013 WL 3157529, at *5. The Fifth Circuit has specifically ruled that the TCHRA "'does not expressly waive sovereign immunity in federal court.'" *Id.*, *citing Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 332-22 (5th Cir. 2002). *See also Sullivan v. Univ. of Texas Health Science Center at Houston Dental Branch*, 217 Fed. Appx. 391, 394 (5th Cir. 2007)(holding that none of the discrimination provisions of the Texas Labor Code (§§ 21.005, 21.201(a), 21.100, 21.204(b), and 21.11) contains the requisite "clear declaration" of consent by

---

[8] In *Will*, 491 U.S. at 71, the Supreme Court explained,

Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself. [citations omitted]

In contrast, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* n.10, *citing Kentucky v. Graham*, 473 U.S. [159, 167 n.14 (1985)]; *Ex parte Young*, 209 U.S. at 159-60.

Texas to be sued).   Therefore this Court lacks subject matter jurisdiction over a TCHRA claim.   Id.

The Supreme Court has held that under the Family and Medical Leave Act ("FMLA") Congress did validly abrogate the States' sovereign immunity as to family-care claims (29 U.S.C. § 2612(a)(1)(C)), but not as to suits for money under the self-care provision (29 U.S.C. § 2612(a)(1)(D). *Taylor*, 2013 WL 3157529, at *5, *citing Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721 (2003); *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1338 (2012); and *Jackson v. Texas Southern University*, Civ. A. No. H-11-4092, 2013 WL 593412, at *6 (S.D. Tex. Feb. 14, 2012).   Thus the Court lacks jurisdiction over a denial of medical care under the FMLA self-care claim.   *Id.*

An age-discrimination claim under the TCHRA against the State or a state agency in federal court is barred by sovereign immunity. *See Hernandez v. Texas Dep't of Human Servs.*, 91 Fed.  Appx. 934, 935 (5th Cir. 2004)("The State of Texas has waived its sovereign immunity in state courts for TCHRA violations . . . .Texas' waiver of sovereign immunity in its own courts, however, is not a waiver of its Eleventh Amendment immunity in federal courts. . . . . Indeed, the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court."), *citing Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985), and *Pennhurst*, 465 U.S. at 120; *Perez v. Region 20*

-13-

*Educ. Service Center*, 307 F.3d 318, 332 (5th Cir. 2002)("A state's waiver of sovereign immunity in state court does not mean the state has waived Eleventh Amendment immunity in federal court"; the Texas Labor Code does not waive Eleventh amendment immunity in federal court).

The Supreme Court has also pronounced that the Age Discrimination in Employment Act's [ADEA's"] "purported abrogation of the states' sovereign immunity is invalid" because the statute could not be enacted pursuant to section five of the Fourteenth Amendment. *Taylor*, 2013 WL 3157529, at *6, *citing Kimel v. Florida Board of Regents*, 528 U.S. 62, 91 (2000). *See also Sullivan v. Univ. of Texas Health Science Center at Houston Dental Branch*, 217 Fed. Appx. 391, 395 (5th Cir. 2007)(affirming dismissal of ADEA claim because Congress has not abrogated the Eleventh Amendment and Texas has not voluntarily waived its immunity). Therefore the Court must dismiss any ADEA claim for lack of jurisdiction. *Id.*

Congress also has not abrogated sovereign immunity with respect to claims under § 1981. *Dittmer v. Texas Southern Univ.*, 2010 WL 3119925, at *4, *citing Sessions v, Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981)("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity.").

**B.   Public Officials in their Individual Capacities:   First Amendment Retaliation, Qualified Immunity, and the Texas Tort Claims Act**

-14-

The law regarding First Amendment protection of public employees' free speech rights, specifically as professors addressing the operation of public institutions where they work, has evolved gradually and the analysis has become increasingly fact intensive.

The United States Supreme Court has "recognized that Congress may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *U.S. v. Nat'l Treasure Employees Union*, 513 U.S. 454, 465 (1995). "The government as employer indeed has far broader powers than does the government as sovereign." *Waters v. Churchill*, 511 U.S. 661, 671 (1993). Public employees are not deprived of their right to free speech because of their employment, but that right is not absolute. *Connick v. Myers*, 461 U.S. 138, 142 (1983). The Supreme Court initially identified as the critical inquiry in modern legal analysis for First Amendment protection of a public employee's speech whether the public employee speaks out as a citizen on matters of public concern under the circumstances. *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008), *citing Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006). "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum

-15-

in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147; *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).  Whether a speech addresses a matter of public concern and thus can serve as the basis of a First Amendment claim is a question of law for the court.  *Connick*, 461 U.S. at 156; *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir. 1991); *Gibson v. Kilpatrick,* 734 F.3d 395, 400 (5th Cir. 2013).  "If the speech does involve a matter of public concern, the government bears the burden of justifying its adverse employment action." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

In *Connick,* the Supreme Court refined the analysis by holding that in determining whether the employee's speech addresses a matter of public concern the Court must consider "the content, form, and context of [the] given statement as revealed by the whole record."  461 U.S. at 147–48.  The time, place, and manner are relevant considerations, as well as the context.  *Id.* at 152.

Even if the public employee does speak as a citizen on a matter of public concern, his speech is not automatically protected.  Instead, if the court first finds the employee speaks as a citizen on a matter of public concern, the court then applies a test to find "a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as employer, in promoting the efficiency of

the public services it performs through its employees." *Pickering*, 391 U.S. at 568. "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419. In *Rankin*, 483 U.S. at 388, the Supreme Court opined that in performing the balancing test, in evaluating the government employer's interest "in the effective functioning of the employer's enterprise,"

> [w]e have previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speakers's duties or interferes with the regular operation of the enterprise. . . . Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest.[9]

---

[9] See also *Garcetti*, 547 U.S. at 418, in which the Supreme Court observed,

> *Pickering* and the cases decided in its wake identify two inquiries to guide interpretations of the constitutional principles accorded to public employee speech.  The first requires determining whether the employee spoke as a citizen on a matter of public concern . . . . If the answer is yes . . . [t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.  This consideration reflects the importance of the relationship between the speaker's expression and employment.  A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be

The Fifth Circuit reads *Pickering*'s balancing test to require the weighing of a "number of factors . . . relevant in balancing the interests of the individual against those of the state, including . . . (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; [and] (5) whether the activity impairs discipline by superiors or harmony among coworkers." *Brady v. Fort Bend County*, 145 F.3d 691, 707 (5th Cir. 1998), *cert. denied*, 525 U.S. 1195 (1999).

In *Waters v. Churchill*, 511 U.S. 661, 678-80 (1994), the Supreme Court held that where the employer and the employee disagree about the content of the employee's speech and its impact on the workplace, the employer must conduct a reasonable investigation of the facts to determine what was actually said. *In accord, Sagle v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 192 (5th Cir, 2005).

"[W]hen public employees make statements pursuant to their

directed at speech that has some potential to affect
the entity's operations.  [citations omitted]

-18-

official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Garcetti*, 547 U.S. at 421.  In *William v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007)(holding that "[j]ob-required speech is not protected"), the Fifth Circuit made clear that a public employee also is not protected by the First Amendment even if his speech was not required by his job duties, but was made in the course of performing his job duties.  "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Id.*  The focus is not on "the content of the speech," but on "the role the speaker occupied when he said it."  *Id.* at 692.  In *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), the Fifth Circuit acknowledged this rule that activities undertaken pursuant to the plaintiff's job duties are not protected by the First Amendment, and also found that where the plaintiff acquired special knowledge through his job of the situation that was exposed in his speech, his speech is not protected.

In *Gibson*, noting that *Garcetti* did not clearly define what making statements pursuant to one's official duty entails nor establish a comprehensive framework for defining the scope of an employee's employment, the Fifth Circuit found that the opinion did

establish that neither a formal job description[10] nor speaking about the subject matter of one's employment is dispositive.  734 F.3d at 401, *citing Williams v. Dallas I.S.D.*, 480 F.3d 689, 692 (5th Cir. 2007).  To fill the gap, the *Gibson* panel, starting from the premise that "activities undertaken in the course of performing one's job are activities pursuant to official duties," identified other factors such as "the relationship between the speech and the employee's job, whether the speech was made within the employee's chain of command,[11] and whether the speech stemmed from special

_____

[10] The Supreme Court, concerned that use of written job descriptions for this purpose might cause employers to limit employees' rights by writing overly broad job descriptions, warned in *Garcetti*, 547 U.S. at 424-25,

> Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

In *Gibson*, 734 F.3d at 403, the panel indicated that it does not completely bar the use of job descriptions or statutory descriptions of such for First Amendment inquiries, but rejected exclusive reliance on them.  The court can consider surrounding facts to decide if an employee's speech is related to any job duties, citing as an example *Briscoe v. Jefferson County*, 500 Fed. Appx. 274, 278 (5th Cir. 2012)(holding that the employee's use of her "special knowledge" of a record-keeping policy in order to substantiate a complaint is a factor suggesting that her speech was official).  *Gibson*. 734 at 404.

[11] Here, too, the *Gibson* panel warned that reporting to agencies outside the chain of command does not necessarily establish citizen status.  Where there is no one else to whom the employee could confidentially report his information either because the higher ups were involved in the problems or the

-20-

knowledge the employee gained as a result of the employee's position." *Gibson*, 734 F.3d at 402. Where a public employee goes beyond her "chain of command" and files complaints outside it, e.g., with the FBI or the EEOC, and her job did not require such communication, her speech is as a citizen. *Id.*, *citing Davis*, 518 F.3d at 307-16. In *Davis, id.*, the Fifth Circuit concluded that if the public employee shared his speech about job concerns with people outside the work place in addition to those in the chain of command at his work place (a "mixed" case), those external communications are made as a citizen and more likely to be protected, and a single communication can raise both official and private matters. *See also Cutrer v. McMillan*, 308 Fed. Appx. 819, 821 (5ᵗʰ Cir. Jan. 30, 2009)(*citing Davis*).

The Supreme Court has also held in *Givhan v. Western Line Consolidated Sch. Dist.*, that even where an employee criticizes his employer in a private communication or setting, the speech may be entitled to First Amendment protection, but that it is then subject to the *Pickering* balancing test. 439 U.S. 410, 415-16 (1979)("Neither the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public."). *See also Garcetti*, 547 U.S. at 411,

---

possible investigation would be endangered, an outside person or agency may be the most appropriate one to receive the information. *Id.* at 404.

520 ("Many citizens do much of their talking inside their respective work places, and it would not serve the goal of treating public employees 'like any member of the public' to hold that all speech within the office is automatically exposed to restriction. [citation omitted]").

To prove a constitutional claim of First Amendment retaliation, a plaintiff must show that (1) she "suffered an 'adverse employment decision,'" (2) her "speech involved a 'matter of public concern,'" (3) the plaintiff's "'interest in commenting on matters of public concern . . . outweighs the [d]efendant's interest in promoting [workplace] efficiency,'" and (4) the plaintiff's speech "motivated the adverse employment decision." *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001), *quoting Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1991). Causation, i.e., that the speech was a substantial factor in motivating the adverse action, is usually a question of fact for the jury in a claim of First Amendment retaliation against a public employee, but at the summary judgment stage, the employee bears the burden of showing that a factual dispute exists. *James v. Texas Collin County*, 535 F.3d 365, 376 n. 10 (5th Cir. 2008). "A factual dispute is 'genuine' if a reasonable trier of fact could return a verdict for the nonmoving party." *Id.* at 373. If the plaintiff succeeds in making a *prima facie* case of causation, a defendant can still prevail on summary judgment if it

can show by a preponderance of the evidence that it would have taken the same adverse employment action "even in the absence of the protected conduct." *Mount Healthy City School dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

To retaliate against an employee for engaging in a protected activity, the employer must actually know that the employee engaged in the protected activity. *Garrett v. Judson Indep. Sch. Dist.*, 299 Fed. Appx. 337, 343 (5th Cir. Nov. 10, 2008), *citing Marsaqlia v. Univ. of Texas, El Paso*, 22 S.W. 3d 1, *5 (Tex. App.--El Paso 1999, pet. denied).

The Fifth Circuit has held that discharges, demotions, refusals to hire, refusals to promote, and reprimands are "adverse employment actions" for purposes of a First Amendment retaliation claims. *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011), *citing Sharp v. City of Houston*, 154 F.3d 923, 933 (5th Cir. 1999). The Fifth Circuit has not yet decided whether the Title VII standard for adverse actions established in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)(whether a reasonable employee would have found the alleged adverse employment action "materially adverse"), applies to First Amendment retaliation cases. *Gibson v. Kilpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2012), *citing DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009).

Citing *Connick*, 461 U.S. at 138-39, the *Dorsett* panel pronounced, "In public schools and universities across this nation,

intrafaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters.  A federal court is simply not the appropriate forum in which to seek redress for such harms."  940 F.2d at 123-24.  It further noted, "We have neither the competency nor the resources to undertake to micromanage administration of thousands of state educational institutions. . . . Of all fields that the federal courts ''should hesitate to invade and take over, education and faculty appointments at [the university] are probably least suited for federal court supervision.''"  *Id.* at 124, *citing Smith v. University of North Carolina*, 632 F.2d 316, 345 & n.16 (4th Cir. 1980)(*quoting Faro v. New York University*, 502 F.2d 1229, 1231-32 (2d Cir. 1974)).

This Court notes that in the context of higher education in public colleges and universities, as well as K-12 schools, some courts have recognized as speech on matter of public concern some of the general areas at issue here, while others have not.  In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court recognized that publicly financed educational institutions may not terminate the employment of a non-tenured college professor based on his general public criticism of the policies of the college administration, and not personal grievances.  Among matters of public concern which some courts have found are protected by First

-24-

Amendment and that are at issue in the instant case are the following: teachers or parents speaking out generally about the college's being unreceptive to student's needs and teacher's salaries and benefits,[12] poor treatment of students,[13] mismanagement of the budget,[14] mismanagement of taxpayer funds,[15] failure to offer needed courses,[16] accreditation,[17] etc. *See e.g.*, *Maples v. Martin*,

_____

[12] *Daulton v. Affeldt*, 678 F.2d 487, 491 (4th Cir. 1982). In Dalton the community college teacher wrote to various newspapers criticizing the school board's mismanagement of taxpayer funds, made requests through the Freedom of Information Act, and distributed questionnaires to her colleagues about professional and unprofessional treatment of teachers).

[13] *See, e.g.,* *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 588 (6th Cir. 2008), *cert. denied*. 553 U.S. 1033 (2006); *Starsky v. Williams*, 512 F.2d 109, 110 (9th Cir. 1975).

[14] In *Pickering*, 391 U.S. at 571-72, the Supreme Court wrote, "[T]he question of whether a school system requires additional funds is a matter of legitimate public concern. . . . Teachers are, as a class, the members of the community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."

[15] *Hammer v. Brown*, 831 F.2d 1398, 1402 (8th Cir. 1987); *Hall v. Marion School Dist. No. 2*, 31 F.3d 183, 186, 192-93 (4th Cir. 1994)(letters to newspaper claiming Board was mismanaging taxpayers' money).

[16] *Daulton*, 678 F.2d at 489

[17] *Johnson v. Lincoln Univ.*, 776 F.2d 443, 451 (3d Cir. 1985); *Maples v. Martin*, 858 F.2d 1546, 1553 (11th Cir. 1988)(finding speech about "substantive issues that could influence the public's perception of the quality of education provided," including "weaknesses in the curriculum," "poor performance of Auburn graduates on professional licensing exams for engineers," "concern that the Department's accreditation is in jeopardy," is protected); *Honore v. Douglas*, 833 F.2d 565, 567

858 F.2d 1546, 1553 (11th Cir. 1988)(finding public concern exists when speech addresses "substantive issues that could influence the public's perception of the quality of education provided," including "weaknesses in the curriculum," "poor performance of Auburn graduates on professional licensing exams for engineers, all of which endanger the ability of the Department to prepare students for professional engineering careers," and "concern that the Department's accreditation is in jeopardy.").

**Qualified Immunity**

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818; *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009). Thus the

_____

(5th Cir. 1987)(finding genuine issues of material fact barring summary judgment as to whether the First Amendment covered the speech of a law professor denied tenure about "law school admissions policy, the size of the student population, administration of the school budget, and the failure to certify graduates for the Texas bar examination in a timely fashion.").

Court examines whether the "officer's conduct violated a constitutional right," as well as "whether the right was clearly established" at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Either prong may be addressed first. *Pearson*, 129 S. Ct. at 808. A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Werneck v. Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted). *See also Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective standard "based on the viewpoint of a reasonable official in light of the information available to the defendant and the law that was clearly established at the time of defendant's actions."). "The 'clearly established' standard does not mean that official's conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012). Officials who act reasonably but mistakenly are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or

those who knowingly violate the law." *Anderson*, 483 U.S. at 641;
*Malley v. Briggs*, 475 U.S. 335, 341 (1986).   "[A] defendant's acts
are held to be objectively reasonable unless *all* reasonable
officials in the defendant's circumstances would have then known
that the defendant's conduct violated the United States
Constitution or the federal statute as alleged by the plaintiff."
*Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001).
The officer is "entitled to qualified immunity if his or her
conduct was objectively reasonable in light of the legal rules that
were clearly established at the time of his or her actions," even
if the conduct violated the plaintiff's constitutional right.
*McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en
banc*).

　　Although qualified immunity is an affirmative defense,
"plaintiff has the burden to negate the assertion of qualified
immunity once properly raised." *Collier v. Montgomery*, 569 F.3d
214, 217 (5th Cir. 2009).   To meet this burden the plaintiff must
allege facts showing that the defendants committed a constitutional
violation under the current law and that the defendants' actions
were objectively unreasonable in light of the law that was clearly
established at the time of the challenged actions.   *Atteberry v.
Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

　　In *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985), the
Fifth Circuit held that when defendant-official raises a qualified

immunity defense in his individual capacity, a heightened pleading standard must be met by Plaintiff to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense.  In *Schultea v. Wood*, 47 F.3d 1427, 1429-34 (5th Cir. 1995)(*en banc*), discussing the development of qualified immunity defense and pleading rules, the Fifth Circuit further opined, "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or its own, require the plaintiff to reply to that defense in detail.  By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations.  A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply."  *See also Floyd v. City of Kenner, La.*, 351 Fed. App'x 890, 893 & n.2 (5th Cir. 2009).

In *Morgan v. Hubert*, 335 Fed. Appx. 466 (5th Cir. 2009), the Fifth Circuit reviewed *Schultea*'s standard and its reasoning:

> We did not ground any such requirement in Rule 9(b), but nevertheless required a plaintiff to plead more than conclusions.  Specifically, we reasoned that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, *at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants* [emphasis added by *Morgan* panel]."  "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

*Morgan*, 335 Fed. Appx. at 469-70.  A denial of qualified immunity

at the motion to dismiss stage, to the extent that it turns on a matter of law, is an appealable final decision under 28 U.S.C. § 1291 because qualified immunity is immunity from suit and, necessarily, shields the official from the burdens of discovery. *Ashcroft v. Iqbal*, 129 S. Ct. at 1946.; *Porter v. Valdez*, 424 Fed. App'x 382, 385 (5th Cir. 2011), *citing Hill v. City of Seven Points*, No. 00-41436, 2002 WL 243261, *4 (5th Cir. Jan. 17, 2002)("Such appellate review is premised upon the reality that, in some instances, if an order is not reviewed before the issuance of a final judgment, the practicality of reviewing that order is lost.").

**Assault and Battery**

The elements of battery under common law are (1) a harmful or offensive contact (2) with a plaintiff's person. *Doe v. Beaumont I.S.D.*, 8 F. Supp. 596, 616 (E.D. Tex. 1998), *citing Price v. Short*, 931 S.W. 2d 677, 687 (Tex. App.--Dallas 1996, n.w.h.), *citing Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W. 2d 627 (Tex. 1967). The elements of assault under Texas common law are (1) the apprehension of (2) an immediate battery. *Id.*[18]

---

[18] Under Texas statutory law, a civil claim for assault and battery has the same elements as a claim for criminal assault and battery. *Rockwell v. Brown*, 664 F. 3d 985, 993 (5th Cir. 2011), *citing Appell v. Muquerza*, 329 S.W. 3d 104, 110 (Tex. App.-- Houston [14[th] dist.] 2010, rev. and rehearing of petition for review denied), *abrogated on other grounds*, *Texas West Oaks Hosp., LP v. Williams*, 371 S.W. 3d 171 (Tex. 2012). "'A person commits civil assault if he 'intentionally, knowingly, or recklessly causes bodily injury to another.'" *Id., citing id.*,

The Texas Tort Claims Act ("TTCA"), Texas Civil Practice and Remedies Code § 101.057, waives sovereign immunity for some torts,[19] but not for claims arising out of an intentional tort, and specifically **not** for claims "arising out of assault and battery, false imprisonment, or any other intentional tort." *Texas Dep't of Public Safety v. Petta*, 44 S.W. 3d 575, 580 (Tex. 2001). *See also Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993)(holding intentional infliction of emotional distress claim was barred by sovereign immunity because it was not one of the claims waived by the Texas Tort Claims Act.).

Section 101.106 of the TTCA. entitled "Election of Remedies," provides in relevant part,

> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.
>
> (f) If a suit is filed against an employee of a governmental unit on conduct within the general scope of

---

*quoting* Texas Penal Code Ann. § 22.01(a)(1).  "'A person also commits assault if he 'intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.''"  *Id., citing id., citing* Texas Penal Code Ann. § 22.01(a)(3).

[19] The TTCA waives sovereign immunity from suits arising from (1) the negligent conduct of an employee if property damage, personal injury or death arises from the operation or use of a motor-driven vehicle or equipment if the employee would be personally liable to the claimant and (2) from injuries caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

that employee's employment and if it could have been brought[20] under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.   On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

"Under the TTCA election of remedies provision, the claims against the individual Defendants--in both their individual and official capacities and for both money and injunctive relief--must be dismissed." *Perez v. Texas A&M Univ. at Corpus Christi*, Civ. A. No. 2:13-CV-225, 2013 WL 6230353, at *12 (S.D. Tex. Dec. 2, 2013), *citing* TTCA § 101.106, and *Texas Bay Cherry Hill v. City of Fort Worth*, 257 S.W. 3d 379, 401 (Tex. App.--Fort Worth 2008, no pet.)(dismissal required under both individual and official capacity); *Leatherwood v. Prairie View A&M Univ.*, No. 01-02-013340-CV, 2004 WL 252275, at *2-3 (Tex. App.--Houston [1st Dist.] Feb. 12, 2004, no pet.)(dismissal is appropriate whether the claim is for damages or injunctive relief.").

Nevertheless § 101.106 expressly limits its scope to suits against "an employee of a governmental unit" and requires dismissal only if it is "based on conduct within the general scope of that employee's employment." *See Franka v. Velasquez*, 332 S.W. 3d 367

---

[20] The phrase "could have been brought" in § 101.106(f) applies to claims raised under the Act "regardless of whether the Act waives immunity from suit." *Franka v. Velasquez*, 332 S.W. 3d 367, 385 (Tex. 2011).

(Tex. 2011)(holding that any state-law tort claim brought against a government employee [in his individual capacity] based on actions within the scope of his or her employment must be dismissed); *in accord Univ. of Tex. Health Science Center at Houston v. Crowder*, 349 S.W. 3d 640, 648-49 (Tex. App.--Houston 914th Dist.] 2011)("[U]nder *Frank*a, if a plaintiff sues a governmental unit and its employee, asserting claims against the employee based on conduct within the general scope of her employment, and if the plaintiff could have but did not assert common-law tort claims against the governmental unit based on the employee's alleged conduct, then this case constitutes a suit "filed under this chapter against both a governmental unit and any of his employees within the means of subsection (e)."), citing § 101.106(e)("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employee shall immediately be dismissed on the filing of a motion by the governmental unit."). Indeed such claims against the government in his individual capacity acting within the scope of his employment must be dismissed even if the state has not waived sovereign immunity for a particular claim. *Univ. of Tex. Health Science Center at Houston*, 349 S.W. 3d at 649. *See also Shurb v. Univ. of Texas Health Science Center and Houston--School of Medicine*, No. 4:13-CV-271, 2013 WL 4096826, at *6 (S.D. Tex. 2013)(If "suit is filed against both the governmental unit and any of its employees

[in their individual capacity] under this chapter, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."). *See also Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999)("[I]f the conduct is the kind the employee is employed to perform, occurs substantially within the authorized time and space limits, and is actuated, at least in part, by a purpose to serve the employer[,] such action is within the scope 'even if the employee . . . used forbidden means of accomplishing results.'"), *quoting Kolstat v. Am. Dental Ass'n*, 527 U.S. 526, 543-44 (1999).  Here Plaintiff has sued both TSU and Individual Defendants, and conclusorily alleged that Individual Defendant Dr. Abobo assaulted her in his individual capacity.

Section 101.106(f) "extends governmental immunity to acts of individual governmental employees acting within the scope of their employment." *Lund v. Giauque*, ___ S.W. 3d ___, 2013 WL 5834398, at *1 (Tex.  App.--Fort Worth Oct. 31, 1213), *citing* LTTS *Charter Sch. Inc. v. C2 Constr., Inc.* 342 S.W. 3d 73, 89-90 (Tex. 2011).  *See also Franka,* 332 S.W. 2d at 381 (and cases cited therein)("The construction of section 101.106(f) . . . foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of his employment.").  Section 101.001(2) of the TTCA defines "employee" as "a person, including an officer or agent, who is in the paid service of a governmental authority, but

-34-

does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control." "Scope of employment" is defined by the TTCA as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code §101.00(5). The *Restatement (Third) of Agency* § 7.07 similarly states,

> An employee acts within the scope of employment performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

**Key Allegations of Plaintiff's Second Amended Complaint (#36)**

At the relevant time Plaintiff was a tenured associate professor, with a Doctor of Pharmacy degree, at the College of Pharmacy and Health Sciences ("COPHS") at TSU in Houston, Texas, where she had been employed for more than twenty years. She alleges that since at least 2007 the faculty and administration of COPHS were involved in an internal dispute about the operation of the college, with the faculty complaining that the administration's conduct was harmful to the students and imperiled accreditation of the college. Faculty member Dr. Mofoluronso A. Enigbokan, wrote a critique relating to the dispute entitled "Inside TSU's Pharmacy

Program:  An Expose on How A Failing Administration is Fomenting an Academic Mess," detailing the administration's failure to follow applicable statutes, internal rules, and academic standards, thereby resulting in inadequate training and professional preparation of the students and disproportionately low passing rates on licensing examinations.  Plaintiff claims that she supported Dr. Enigbokan's protest and that she independently voiced her own criticisms of the credentials and abilities of certain faculty and administrators, advocated for improved treatment of students, and urged ways to protect the accreditation of the pharmacy program, which, along with the probationary status of the general accreditation of the University, posed a potentially devastating loss of opportunity and services to minority communities served by the TSU.  Plaintiff claims that in 2010, COPHS responded by changing requirements and arbitrarily dismissing dozens of students, including some close to graduation.  Some students then protested at a meeting of TSU's Board of Regents, while others filed lawsuits against COPHS.

The complaint asserts that outside the scope of her duties as a faculty member and in her role "as a concerned citizen with particular knowledge of matters that were of legitimate public concern and discussion"  (#36 at p. 6), Plaintiff made oral presentations at public meetings of the Board of Regents, protesting the dismissal of students based on the sudden and

unjustified changes to the academic standards, which were the result of COPHS's inadequacies in training and which caused financial hardship to students. She also complained about a failure to confirm the academic credentials of TSU faculty and administrators, which resulted in inflated and unjustified salaries paid out of public resources. She claims that her protests were in the public interest because TSU's student body is comprised of a large percentage of minority and low-come students and the administration's actions necessarily had a disproportionately adverse effect on those communities, constituted a waste of public resources already expended in the education of numerous students, and were so arbitrary and unfair that they discouraged minority students from seeking professional education in COPHS. The issues received extensive public notice and discussion in the media.

Plaintiff charges that because she exercised her rights to free expression under the federal and Texas Constitutions, Individual Defendants retaliated and continue to retaliate against her in the last two years in the following ways *inter alia*: requested that she retire; discouraged her attempts to secure promotion; provided lower compensation than what she was entitled to, given her education, experience and demonstrated ability, scope of duties, and time of service; arbitrarily disqualified her from service in the Faculty Senate and on institutional committees; participated in personal disparagement and humiliation of

Plaintiff; denied her the compensation and leave provided by University policies and practices; denied her access to or use of office equipment; denied or disregarded her participation in academic activities; and assigned her a teaching load disproportionately greater than that assigned to other faculty members, including those with salaries higher than her own.

As a specific example of discrimination, Plaintiff claims that Defendant Osemene repeatedly stated to Plaintiff that Plaintiff was too old to serve on the faculty and must retire.[21] Defendant Osemene, with the participation of Defendants Ohia and Hayes, allegedly imposed retaliatory acts on Plaintiff with the intention of having Plaintiff surrender her tenure and resign. Plaintiff claims that these three Individual Defendants acted under color and authority of the State of Texas.

Plaintiff, born in 1951, was over the age of forty and within the protection of Texas Labor Code § 21.051 at the relevant time period. Plaintiff filed an age discrimination charge with the United States Equal Employment Opportunity Commission and the Texas Workforce Commission, Civil Rights Division, on April 23, 2011.

Plaintiff further asserts that TSU, based on information provided by Victor Simms, M.D., who was treating her for thyrotoxicosis and who stated that she was unable to perform any of

---

[21] TSU notes this is the only allegation related to age discrimination and states that at the time of her death, she was serving on the faculty and had not resigned or retired.

her job duties, gave her written documentation that she was eligible for medical leave under the FMLA, 29 U.S.C. §§ 2601, *et seq.*, and a document titled "Notice of Eligibility and Rights & Responsibilities of FMLA." Plaintiff relied on these statements of her eligibility and entitlement to benefits under the FMLA. Plaintiff claims that when she returned from medical leave, TSU "impeded her return, refused or delayed payment of her salary, and prevented her from returning to the position she had when she took leave by refusing to assign her to classroom teaching and assigning her to non-teaching duties."[22]  #36 at p. 10.

Plaintiff also claims that she was publicly demeaned, ridiculed, and insulted by Individual Defendants Ohia, Hayes, and Osemene, and that her personal and professional reputations were seriously damaged and she was exposed to hatred and contempt.  She alleges that as a result, Dr. Abobo assaulted her, striking her on the back and causing her to fall, on February 26, 2012 at TSU's facilities at the McGovern Campus.  While she was on the ground, an administrator arrived and caused her embarrassment, humiliation and emotional distress, which still continue.  She suffered painful bruises that required medical attention and caused her to miss work for a few days.  TSU and the Individual Defendants' failure to take

---

[22] TSU points out the contradiction between this allegation and Plaintiff's complaint that she was assigned "a teaching load disproportionately greater than assigned to other faculty members."

action caused Plaintiff loss of pay and benefits, humiliation, emotional distress, damage to her personal and professional reputation, damage to her earning capacity, and damage to her enjoyment of life.

### TSU's Motion to Dismiss (#37)

TSU, as an "arm of the state," first contends that as a matter of law the Court is deprived of jurisdiction to hear a suit against it unless it can show that sovereign immunity is expressly waived. *Pennhurst*, 465 U.S. at 100-02; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Although the state of Texas waived its sovereign immunity to be sued in state court for TCHRA violations, that waiver does not waive Eleventh Amendment immunity for such claims in federal court. *Hernandez v. Texas Dept. of Human Services*, 91 Fed. Appx. 934, 935 (5th Cir. 2004). Thus this Court is barred from exercising subject matter jurisdiction over Plaintiff's age discrimination claims under the TCHRA. *Perez*, 307 F.3d at 332. This Court agrees.

Next TSU asserts that Plaintiff fails to plead a plausible claim for denial of medical leave benefits under state law. Plaintiff's complaint refers to the FMLA regarding her medical leave, but a FMLA claim against TSU as an arm of the State is barred by the Eleventh Amendment. Plaintiff has no entitlement to such a claim under state law. Although she asserts it is brought pursuant to "statutory and common law principles of contract and

promissory estoppel in Texas law," she fails to identify any Texas statute that provides her with entitlement to medical leave or bars retaliation for taking that leave, the way the FMLA does, not to mention a statute that waives the State's sovereign immunity to such a claim by State employees.

Two principles inform the doctrine of sovereign immunity: immunity from suit and immunity from liability. *General Services Com'n v. Little-Tex Insulation Co.*, 39 S.W. 3d 591, 594 (Tex. 2001). Immunity from suit precludes an action against the State unless the Legislature expressly consents in clear and unambiguous language, while immunity from liability shields the State from judgments even if the Legislature has expressly consented to be sued. *Id.* at 594-97*, citing Federal Sign v. Texas Southern University*, 951 S.W. 2d 401, 408 (Tex. 1997), *superseded by statute*, Tex. Gov't Code § 2260.001-.108 (providing sovereign immunity from suit in breach-of contract cases, but establishing an exclusive administrative process to resolve claims arising from all written contracts for the sale of goods and services or construction.). When the State enters into a contract, it is liable on a contract made for its benefit as if it were a private person. *Id.* When the State contracts with a private citizen, it waives its immunity from liability, but it does not waive immunity from suit unless the private citizen obtains legislative consent to sue the State on a breach of contract claim. *Id., citing Federal*

-41-

*Sign*, 951 S.W. 2d at 408. "[I]t is the legislature's sole province to waive or abrogate sovereign immunity." *Texas Nat. Res. Cons. Comm'n v. IT-Davy*, 74 S.W. 3d 849, 853 (Tex. 2002), *citing Federal Sign*, 951 S.W. 2d at 409. That requirement applies to all of Plaintiff's contractual claims, including breach of contract and promissory estoppel. *IT-Davy*, 74 S.W. 3d at 852, 860 (dismissing claims for breach of contract, negligent misrepresentation, quantum meruit, and promissory estoppel based on sovereign immunity), *citing General Services Com'n v. Little-Tex Insulation Co.*, 39 S.W. 3d 591, 597 (Tex. 2001)("[T]here is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature."). *See, e.g., Prairie View A&M Univ. v. Dickens*, 243 S.W. 3d 732, 735, 737 (Tex. App.--Houston [14th Dist.] 2007)(dismissing breach of express contract and breach of implied contract claims brought by former employee against state university, its president, and vice president in their official capacities on sovereign immunity grounds); *Ho v. Univ. of Texas at Arlington*, 984 S.W. 2d 672, 679, 682-83 (Tex. App.--Amarillo 1998, pet. denied)(dismissing breach of written contract, breach of oral agreement, and breach of an implied agreement as contractual claims barred by sovereign immunity); *Nussbaum v. Univ. of Tex. Med. Branch at Galveston*, No. 01-99-00871-CV, 2000 WL 1864048, at *3 (Tex. App.--Houston [1st dist.] Dec. 21, 2001, pet. denied)(claim for promissory estoppel "is a form of contract claim" and is

governed by the doctrine of sovereign immunity; "a private citizen must obtain legislative permission to sue the state for a contract claim").  The Court concurs with TSU's argument.

TSU further argues that Plaintiff has failed to identify any contract between her and TSU entitling her to the alleged medical leave benefits.  She has also failed to allege a plausible claim for denial of medical leave, since she admits that she was granted leave, took leave, and returned to her job as Associate Professor. Nor has she alleged a plausible retaliation claim relating to the medical leave since she asserts both that TSU refused to assign her to classroom teaching on her return from medical leave, yet also complains that TSU assigned her a heavier teaching schedule than other faculty members.  Plaintiff also fails to allege any promise by TSU to return her to the same duties and teaching schedule when she returned.  *See Hartford Fire Ins. v. City of Mont Belvieu, Texas*, 611 F.3d 289, 295 (5th Cir. 2010)(holding that if promise is "too vague to support detrimental reliance," plaintiff's reliance will be deemed unjustified as a matter of law).

In sum, because Plaintiff has not alleged facts establishing the Court's jurisdiction over her claim for medical leave and has not asserted against TSU a plausible claim for denial of medical leave or for  retaliation for taking leave, the claims should be dismissed.

Furthermore, Plaintiff has already had a "third bite of the

apple" with the filing of her Second Amended Complaint and should not be granted leave to amend again. *United States ex rel. v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)(holding that leave was properly denied where the plaintiff had already had two opportunities to amend and "[t]he record indicates that the second instance was to cure the complaint's lack of specificity, the same basis on which the Relator again argues he should be allowed to amend a third time.").

### Individual Defendants' Motion to Dismiss (#41)

Plaintiff brings a First Amendment retaliation claim against the Individual Defendants, based on her alleged speech to the TSU Board of Regents about an "internal dispute regarding the operation of the college," the credentials and competence of the faculty and administrators, the treatment of students, and the at-risk accreditation of the pharmacy program. She claims that Dr. Osemene, with the "acquiescence and participation" of Drs. Ohia and Hayes, retaliated against her for her speech through burdensome teaching assignments, low pay, administrative matters, and departmental procedures, all in an effort to get her to resign.

Plaintiff also charges Dr. Abobo with common-law assault.

An "adverse employment action" for First Amendment retaliation claims under 42 U.S.C. § 1983 is restricted to "ultimate employment decisions" such as discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Breaux v. City of Garland*,

205 F.3d 150, 157 (5th Cir. 2000).  In *Breaux*, the Fifth Circuit has noted that "in the education context, this court has held that decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation."  *Id.*  Plaintiff alleges, as retaliatory acts, requests that she retire, discouragement of her attempts to secure a promotion, lower compensation relative to that of peers, personal disparagement, and heavier teaching loads:  none of these actions qualifies as an ultimate employment decision that can constitute an adverse employment action for a First Amendment claim.  Instead they are "decisions concerning teaching assignments, pay increases, administrative matters and departmental procedures" that "do not rise to the level of a constitutional deprivation."  *Id.*

Individual Defendants further maintain that Plaintiff cannot meet the second element of a First Amendment retaliation claim because her speech did not address a matter of public concern. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."  *Garcetti*, 547 U.S. at 421.  Moreover, where a faculty member's speech addresses internal matters of the state university instead of matters regarding possible wrongdoing or a breach of the public trust, the speech is not of "public concern."

*Connick*, 461 U.S. at 148 (internal communications about employee transfers, office moral, etc., are not matters of public concern); *Dorsett*, 940 F.2d at 123-24 (professor's speech "concerning teaching assignments, pay increases, administrative matters and departmental procedures" are not matters of public concern); *Janmeja v. Louisiana State Univ.,* 116 F.3d 475, No. 96-30280, 1997 WL 255550, at *2 (5ᵗʰ Cir. April 14, 1997)(affirming district court's dismissal of First Amendment claim where a professor's letter linking attrition rate in academic program to inadequate preparation of incoming students was not a matter of public concern, and if it were, Janmeja's interest in commenting upon the matter was not greater than the University's interest in promoting the efficiency of the public service defendants performed.).  Here Plaintiff has alleged that her speech related to an "internal dispute regarding operation of the college," which included credentials and ability of certain faculty and administrators, faculty salaries, treatment of students, the accreditation of the pharmacy program, and student dismissals.  Because these matters relate to the internal administration of the COPHS and do not reach the level of potential wrongdoing or a breach of the public trust, and because her speech took place in the forum of a Board of Regents meeting about COPHS' administration, and not to anyone outside the university, it was not a matter of public concern. *Dorsett*, 940 F.2d at 123-35.

Nor does Plaintiff allege facts supporting the final element of a First Amendment retaliation claim, i.e., that the speech motivated the defendant's purported retaliatory action. *Beattie*, 254 F.3d at 601. She fails to state when the speech allegedly occurred or when the purported retaliatory acts took place to suggest that proximity in time might plausibly suggest a causal nexus. *Barkley v. Singing River Elec. Power Ass'n*, 433 Fed. Appx. 254, 260 (5th Cir. 2011)("temporal proximity mut be very close to show causation."). Nor has Plaintiff alleged that Drs. Ohia, Hayes and Osemene were aware of her protected activity when they took the alleged retaliatory actions. Even if she had, "[a]n employer's knowledge of a plaintiff's participation in a protected activity, without more, is insufficient to show a *causal connection* between the plaintiff's participation in the activity and the adverse employment action." *Houston v. EBI Companies*, 53 F.3d 1281, No. 94-10968, 1995 WL 295897, at *5 (5th Cir. Apr. 21, 1995)(emphasis in original). Nor has she asserted that any of the Individual Defendants made any disparaging comments about her alleged speech. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992)(holding that disparaging comments about plaintiff's filing of an EEOC charge constitute evidence of retaliation).

Because Plaintiff's complaint lacks facts to support a plausible First Amendment retaliation claim against any of the Individual Defendants, those claims should be dismissed. *Charles*

-47-

*v. Cockrell*, 202 Fed. Appx. 48 (5th Cir. 2006)("Charles fails to state a claim for retaliation because she has neither supplied evidence of motivation nor adequately alleged a chronology of events that would allow a plausible inference of retaliation.").

Even if Plaintiff had stated a plausible claim, she has failed to allege facts to defeat the Individual Defendants' claims of qualified immunity.  They contend that even if Plaintiff's speech involved a matter of public concern and that the Individual Defendants' actions were in retaliation, those actions do not violate a right that was clearly established at the time.  In light of the law of workplace speech, it would not have been clear to an objectively reasonable officer in the Individual Defendants' shoes that Plaintiff's alleged speech to the TSU Board of Regents relating to an "internal dispute regarding the operation of the college" addressed a matter of public concern such that it would be protected by the First Amendment.  *Dorsett*, 940 F.2d at 123-25. Moreover to defeat Drs. Ohia and Hayes' assertion of qualified immunity, Plaintiff must do more that allege that Drs. Ohia and Hayes acquiesced and participated in Dr. Osmene's purported retaliatory acts.  Plaintiff has not alleged any facts to plausibly suggest that each of the Individual Defendants took any alleged retaliatory action with knowledge of Plaintiff's alleged speech, no less the requisite retaliatory intent to support a knowing violation of the law to defeat qualified immunity. *Iqbal*, 129 S.

Ct. at 1948, requires Plaintiff to plead that each Individual Defendant "through the official's own individual actions, has violated the Constitution."

Finally, insist the Individual Defendants, the common-law assault claim against Dr. Abobo in the presence of other faculty, students, and administrators is barred by the TTCA's strict "Election of Remedies" provision, Tex. Civ. Prac. & Rem. Code § 101.106(e).  A suit "could have been brought" under the TTCA against the governmental entity regardless of whether the TTCA waives immunity for such claims. *Franka,* 332 S.W. 3d at 385. *See also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W. 3d at 659 ("Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act] for purposes of section 101.106.'").  Section 101.106(f) "foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment" and the claims must be brought against the state agency even if it is immune from those claims. *Franka*, 332 S.W. 3d at 382.  "Therefore a defendant is entitled to dismissal under section 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the government unit under the

Tort Claims Act." *Anderson v. Bessman*, 365 S.W. 3d 119, 124 (Tex. App.--Houston [1st Dist.] 2001, no pet.)(*citing Franka*, 332 S.W. 3d at 369)). To determine if the conduct was within scope of employment the court examines "whether the individual defendant was an employee of a governmental unit and whether the alleged acts fall within the scope of that employment at the relevant time." *Id.* "The statute strongly favors dismissal of governmental employees." *Id.* The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). The Texas Supreme Court has concluded, "an official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 658 (Tex. 1994).

The Individual Defendants argue that Dr. Abobo was acting in the general scope of employment when he assaulted Plaintiff because he was an Associate Professor at COPHS and because the alleged assault occurred on TSU's campus in the presence of faculty, students, and administrators. The sole plausible inference is that he was "being in and about the performance of a task lawfully assigned" to him as an Associate Professor under §101.001(5). Even if he had a personal or improper motive, his actions would still be

within the scope of his employment for purposes of 101.106(f).
*Bessman*, 2011 WL 5429069, at *5 ("So long as it falls within the
duties assigned, an employee's conduct is 'within the scope of
employment, even if done in part to serve the purposes of the
employee or a third person.").[23]  The Court observes that in *Hopkins
v. Strickland*, No. 01-12-00315-CV, 2013 WL 1183302, at *3 (Tex.
App.--Houston [1st Dist.] Mar. 21, 2013), "[A]n act may still be
within the scope of the employee's duties even if the specific act
that forms the basis of the civil suit was wrongly or negligently
performed so long as the action was one related to the performance
of his job.").  Individual Defendants urge that because the assault
claim is based on conduct within the general scope of Dr. Abobo's
employment and could have been brought under the TTCA against TSU,
the claim against him in his individual capacity should be
dismissed pursuant to section 101.106(f).

### Plaintiff's Opposition (#47) to Both Motions and Second Response in Opposition (#51)

Plaintiff emphasizes that in *Rutan v. Republican Party of
Illinois*, 497 U.S. 62, 75 (1990), the Supreme Court held that in a
Title VII retaliation claim, actions well short of a discharge,

---

[23] Although the matter cannot be considered on this motion to
dismiss, which is limited to review of the complaint, Individual
Defendants state that if the case proceeds, it will be shown that
the assault occurred while Plaintiff and Dr. Abobo were
proctoring an exam.  #41 at p. 12 n.5.

such as denial of promotion and transfers, can be adverse
employment actions for purposes of infringement of public
employees' First Amendment rights under § 1983.[24]

Plaintiff argues that the Fifth Circuit has not followed and
applied *Rutan*'s broad construction of adverse employment action[25]

---

[24] In *Rutan*, in the context of patronage (the power of
government officials to make employment decisions based on an
individual's political affiliation), the Supreme Court rejected
as "unduly restrictive" the Seventh Circuit's standard in its
opinion below for measuring alleged patronage practices in
government employment, i.e., that "only those employment
decisions that are the 'substantial equivalent of dismissal'
violate a public employee's rights under the First Amendment,"
because that high standard

> fails to recognize that there are deprivations less
> harsh than dismissal that nevertheless press state
> employees and applicants to conform their beliefs and
> associations to some state-selected orthodoxy. . . .
> The First Amendment is not a tenure provision
> protecting public employees from actual or constructive
> discharge.  The First Amendment prevents government,
> except in the most compelling circumstances, from
> wielding its power to interfere with its employees'
> freedom to believe and associate, or not to believe and
> not associate.

497 U.S. at 75-76.  It insisted that actions less than discharge
or constructive discharge, for example hiring, promotion,
transfer and recall, trigger First Amendment retaliation
protection.  *Id.* at 72  In footnote 8, *id.* at 75, the high court
commented,  "[T]he First Amendment, as the court below noted,
already protects state employees not only from patronage
dismissals but also from "even an act of retaliation as trivial
as failing to hold a birthday party for a public employee . . .
when intended to punish her for exercising her free speech
rights."  That footnote has caused controversy among the courts.

[25] The Court questions the accuracy of this statement.  *See,
e.g., Brady v. Fort Bend County*, 145 F.3d 691, 703 (5th Cir.
1998)("While *Rutan* addressed only political patronage, we have
applied it [regarding an employer's decision to transfer, recall

and that the Fifth Circuit's characterization of teaching

---

and hire] to cases involving public employer retaliation for
employees' exercise of their right to free speech."), *citing
Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37
F.3d 1146, 1149-50 (5th Cir. 1994); *Click v. Copeland*, 970 F.2d
106, 110-11 (5th Cir. 1992.")("transfers to jail could be
considered demotions even though they suffered no reduction in
salary")).  Another example is *Dorsett*, 940 F.2d 121.

Nevertheless, the Court observes that the Fifth Circuit's
construction of *Rutan* limits what Plaintiff describes as its
"breadth."  In *Pierce*, 37 F.3d at 1149 n.1, the appellate court
explained,

> *Rutan*'s delineation of the scope of harm actionable
> under the First Amendment comports with our pre-*Rutan*
> retaliation cases.  *See Bickel v. Burkhart*, 632 F.2d
> 1251, 1255 n.6 (5th Cir. 1980)(requiring important
> conditions of employment to be involved in the
> retaliation).  The last sentence of *Rutan*'s footnote 8,
> however, can be read to create a distinction between
> retaliation and other claims under the First Amendment.
> *See* 497 U.S. at 76 n.8 . . . (suggesting that trivial
> acts of retaliation may be actionable).  Such a
> literal reading of this Supreme Court's dictum "would
> be a serious mistake" because that sentence is
> inconsistent with the body of the opinion.  *Scott v.
> Flowers*, 910 F.2d 201, 216 n.32 (5th Cir.
> 1990)(Garwood, J, dissenting).  *But see Tao v. Freeh*,
> 27 F.3d 635, 639 (D.D. Cir. 1994)(applying *Rutan*'s
> footnote 8 as the standard for actionable harm in First
> Amendment retaliation claim).  We choose not to read
> the Supreme Court dicta literally; rather, we apply the
> main analysis of *Rutan* to retaliation claims and
> require more than a trivial act to establish
> constitutional harm.

In *Pierce*, for example, *inter alia* the panel found that even
though some of the defendants' actions (investigating Pierce for
trafficking and a verbal altercation, unauthorized videotaping,
and a polygraph examination) "may have had the effect of chilling
her protected speech, they are not actionable."  37 F.3d at 1150.
It found that neither investigation resulted in any action being
taken against Pierce, the videotaping was done in a public place,
and no adverse result came from the polygraph.  *Id*.

This Court is bound by the Fifth Circuit's ruling.

assignments, pay increases, and other matters as "relatively trivial" is inconsistent with *Rutan* and *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (5th Cir. 2006)("In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this [Title VII] context means it might well have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.''"). Plaintiff argues that "the determination of whether plaintiff sustained an adverse action in this case depends on consideration of the facts as alleged in the second amended complaint." #47 at p. 3.

Plaintiff notes that in *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009),[26] *cert. dismissed*, 130 S. Ct. 3450 (2010), the Fifth

---

[26] In this case, DePree, a tenured professor at the University of Southern Mississippi, was relieved of his teaching duties and evicted from his office, although permitted to continue his research and to access the school's computer system and library, allegedly because of his negative and disruptive behavior and failure to engage in scholarly or professional activities. DePree claimed that Defendants (the university's president and various administrators and faculty members) were retaliating against him because he maintained a website that criticized the University and some of its faculty and administrators and because he complained to the accreditation agency about the school. He filed suit under § 1983, alleging violations of his right to due process and First Amendment retaliation, as well as state law claims. Regarding that part of DePree's suit that is relevant to Dr. Jackson's suit, the district court denied DePree's request for injunctive relief, and granted summary judgment in favor of defendants in their individual capacity and stated *inter alia* that DePree had failed to show a First Amendment retaliation action because he had not been subjected to an adverse employment action. The Fifth Circuit agreed because all tangible accoutrements of his

Circuit observed that although it had

> not formally applied *Burlington* to First Amendment
> retaliation claims, the interrelation among [three cases
> "undermining DePree's assertion that he suffered an
> actionable adverse employment action,"][27] yields no
> "clearly established law" that [Defendant, the university
> president,] would have known she was violating by
> revoking DePree's teaching duties and access to the
> business school.  At most, these cases create a fact
> issue to whether DePree suffered a material adverse
> employment action.  Similarly, no clearly established
> law dictated that Saunders could not impose discipline,
> notwithstanding a few references to DePree's "speech," in
> light of the uniform reports about his intimidating and
> disruptive behavior.  In sum, this court cannot conclude
> that Saunders's action was objectively unreasonable,
> "assessed in light of the legal rules that were clearly
> established at the time it was taken."  . . . .  In First
> Amendment retaliation cases, "[t]here will rarely be a
> basis for *a priori* judgment that the termination or
> discipline of a public employee violated 'clearly
> established' constitutional rights." [citations omitted]

*Id*.  Plaintiff urges that merely because the Fifth Circuit has not

identified what conduct constitutes impermissible retaliation for

First Amendment purposes should not bar trial courts from applying

---

position, except teaching duties, remained stable.  It found that
if DePree's speech was protected by the First Amendment, the
president was entitled to qualified immunity because there was no
clearly established law of which the president would have known
she was violating by revoking DePree's teaching duties and access
to the business school.  The Fifth Circuit reversed the denial of
injunctive relief and remanded the issue for further proceedings
because DePree's claim against University administrators might
yield prospective injunctive relief.

[27] Citing i.e., *Harrington v. Harris*, 118 F.3d 359, 365 (5th
Cir. 1997), *Dorsett*, 940 F.2d at 123 ("Actions such as 'decisions
concerning teaching assignment, pay increases, administrative
matters, and departmental procedures,' while extremely important
to the person who has dedicated his or her life to teaching, do
not rise to the level of a constitutional deprivation"), and
*Burlington*.

the plain authority of the Supreme Court in *Rutan*.   Instead the trial court should examine the facts in the record to "define the scope of protection due and to provide any explication to the Fifth Circuit that the appellate court might consider necessary."  #47 at p. 5.   Plaintiff also contends that for purposes of qualified immunity,  the holding in *Burlington* and the Fifth Circuit's observations in *DePree* that *Burlington*'s holding should be considered along with the Fifth Circuit's earlier holdings in *Harrington* and *Dorsett*,  make the law "clearly established" regarding the actions engaged in by the Individual Defendants.

Plaintiff also insists that the issues of the maintenance of the COPHS's accreditation, provision of professional preparation to students for licensing examinations,  the ability and credentials of the pharmacy faculty and administrators,  the treatment of students,  including the imposition of serious financial burdens that have a disparate effect on minority and low-income communities from which large numbers of pharmacy students come,  and the improvements required to avoid reckless waste of public resources are matters of public concern that have already adversely affected dozens of students, been widely reported in the media, and evoked public reaction.   Plaintiff's speech was not limited to her position or duties as a faculty member but was made as a concerned citizen about matters of public concern and discussion.   There has been no allegation, no less showing, that Plaintiff's public

-56-

statements were part of her official duties, rendering inapplicable the holdings of *Garcetti* and *Connick*, and the dicta of *Dorsett*.

Plaintiff also maintains that her speech motivated the alleged retaliation.  Plaintiff claims the Second Amended Complaint, ¶¶ 4.22.1–4.22.9 delineates nine ways in which the Individual Defendants imposed a series of adverse actions and she testified about them in her deposition and referenced them in documents she produced to Defendants.  She urges a decision based on the merits, not simply on pleading standards.  *Haverda v. Hays County*, 723 F.3d 586, 592 (5th Cir. 2013)("Summary judgment should be used most sparingly in . . . First Amendment cases . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities."), *citing Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001), *quoting Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998).[28]

As for qualified immunity, Plaintiff insists that the law was clearly established to protect her from Defendants' retaliations motivated by her speech in the public interest.  She points again to the nine ways she has alleged that Defendants' conduct adversely affected her.  She has alleged that Defendants Ohia, Hayes, and Osemene, as administrative supervisors, exercised influence and control over her faculty rank, compensation, and duty assignments.

---

[28] The Court reminds Plaintiff's counsel that this case is not before the Court on summary judgment under Rule 56, but on motions to dismiss based on pleading under Rule 12(b).

Moreover Plaintiff challenges Defendant Abobo's claim that he was acting within the scope of his employment because he was a faculty member at the time and the assault occurred in the presence of other faculty and students.  Plaintiff argues that the issue must be determined by summary judgment or at trial.

Regarding her age discrimination claim under the TCHRA, Plaintiff contends that the Texas statue, which was enacted to correlate state law with federal law in the area of discrimination in employment, addresses the evil of workplace discrimination by applying the same standards and using the same enforcement mechanism as those in the ADEA.  In *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 89 (2000), the Supreme Court held that the ADEA did not validly abrogate the Eleventh Amendment immunity of States from suit by private individuals under § 5 of the Fourteenth Amendment because the discriminatory conduct it prohibited, as applied to the states, is disproportionate to similar conduct prohibited by the Equal Protection clause.[29]  Plaintiff claims that because the Texas statute applies the same standards and uses the

---

[29] The Supreme Court distinguished state discrimination on the basis of age (which is not a suspect classification), requiring rational review under the Equal Protection Clause, and state discrimination on the basis of race or gender, which require strict scrutiny review and "a tighter fit between the discriminatory means and the legitimate ends they serve."  *Siler-Khodr v. Univ. of Tex. Health Science Center San Antonio*, 261 F.3d 542, 550 (5th Cir. 20010, *citing Kimel*, 528 U.S. at 84.

same enforcement mechanism as the federal government, allowing this court to resolve the age discrimination claims would make for efficient vindication of the policies adopted by Texas.  Should the court decide the claims of age discrimination cannot be asserted in federal court against an agency of the State, it should dismiss them without prejudice to allow Plaintiff to bring them in Texas district court.

As for her medical leave claims, Plaintiff contends that Defendants are ignoring her written confirmation from the University that it recognized her entitlement to leave and to the University's sick leave benefits under the FMLA, on which she justifiably relied.  Her claims that the University impeded her return from sick leave, delayed or refused to pay her salary, and barred her from returning to teaching are not denied and must be taken as true under Rule 56 procedure.[30]  Plaintiff argues that the circumstances suggest that she has obtained property rights under terms of the FMLA and the University's leave policies, based on oral and written promises by authorized agents of the University. *See Courtney v. The University of Texas System*, 806 S.W. 2d 277, 286 (Tex. App.--Fort Worth 1991, writ denied).  The *Courtney* court opined that while under the sovereign immunity doctrine permission

---

[30]  The Court again notes Rule 56 does not apply to motions to dismiss under Rule 12(b)(6), but agrees that well pleaded allegations under the appropriate rule are so viewed.

of the state was necessary to maintain suit for a breach of contract for future employment against the state, the same was not true for a claim of wrongful deprivation of property rights without due process.  806 S.W. 2d at 282-83, 284.  Plaintiff points to her complaint's references to contract and estoppel principles.  She also notes that *Courtney* cited *Industrial Construction Management v. De Soto I.S.D.*, 785 S.W. 2d 160, 163 (Tex. App.--Dallas 1989, no writ)[31](noting that the Texas Constitution, article 1, section 17 provides that property shall not be taken from a person without the person's consent, concluded that the State's "taking of the Plaintiff's labor without consent and without adequate compensation

---

[31] In *DeSoto*, after a construction company built a cafeteria for an elementary school, it ended up in a dispute with the school district about how much money it was owed.  The construction company sued for breach of contract.  The trial court granted the school district's motion for summary judgment based on sovereign immunity.  On appeal, the court of appeals reversed, held that the state waives sovereign immunity and consents to suit when it enters into a contract with another party and that when the school district failed to pay the full amount of money dues, the school district "took" the construction company's labor, materials, and equipment without its consent and without adequate compensation.  785 S.W. 2d at 163.  In *Courtney*, the court disagreed that all aspects of sovereign immunity are waived when the state contracts with another party.  806 S.W. 2d at 284.  While immunity from liability is deemed waived, immunity from suit is not.  *Federal Sign v. Texas Southern University*, 951 S.W. 2d 401, 408 (Tex. 1997), superseded by Tex. Gov't Code § 2260.001-108, establishing exclusive administrative procedure for breach of contract claims against the State.  See the Court's summation of the University's correct discussion of this issue on pages 40-41 of this Opinion and Order.

was actionable),[32] *overruled by Federal Sign v. TSU*, 951 S.W. 2d 401 (Tex. 1997)(superseded by statute on other grounds as stated in *Little-Tex*, 39 S.W. 3d at 593).   806 S.W. 2d at 284.   Plaintiff maintains that even if the Court interprets *Federal Sign* as barring contract suits against the University, Plaintiff's claims relating to the FMLA and sick leave rates can be brought pursuant to the principles of quantum meruit and promissory estoppel.   *Mitsuba Texas, Inc. v. Brownsville I.S.D.*, No. 05-97-01271-CV, 2000 WL 122348, at *4, 5 (Tex. App.--Dallas Feb. 2, 2000, no pet.).[33]

### Individual Defendants' Reply (#50)

Defendants object to Plaintiff's attempt to save her First Amendment retaliation claim by arguing that she suffered an actionable adverse employment action when, under Fifth Circuit law,

---

[32] Individual Defendants correctly object that *Courtney* does not deal with a claim of a property right to medical leave nor recognize such a right under the Texas Constitution.   Instead it addressed whether the employment contract of a university lecturer gave rise to an expectation of continued employment sufficient to establish due process rights  as defined in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Therefore it does not apply here.   This Court agrees.

[33] Individual Defendants correctly point out that this case involved contract claims against a local government agency, not a state agency, does not address the state's sovereign immunity to contract-based claims, and thus is not relevant.   *See, e.g., Dallas County Hosp. Dist. v. Hospira Worldwide, Inc.*, 400 S.W. 3d 182 (Tex. App.-Dallas 2013, rehearing en banc denied) (distinguishing sovereign immunity and local government immunity); *LTTS Charter School, Inc. v. C2 Construction, Inc.*, 358 S.W. 3d 725 (Tex. App.--Dallas 2011).

she did not.   In *DePree*, 588 F.3d at 288, the Fifth Circuit declined to apply the *Burlington* standard for actionable adverse employment action in Title VII cases to section 1983 claims for alleged constitutional violations, including First Amendment retaliation claims.  *See Clancey v. City of College Station*, 2011 WL 335148, at *5 (S.D. Tex. Jan. 31, 2011)("[B]ecause the Fifth Circuit has not yet formally applied *Burlington* to First Amendment retaliation claims, see *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009), we will apply the Breaux standard[34] to assess the alleged adverse employment action."); *Elwakin v. Target Media Partners Operating Co., LLC*, Civ. A. No. 11-2648, 2013 WL 2443790, at *15 n.35 (E.D. La. June 4, 2013)("The Fifth Circuit has also declined to extend the 'materially adverse' standard to employment-related retaliation provisions brought for Constitutional violations.")(*citing DePree*).[35]  They further note that Plaintiff has failed to cite any contrary authority.

Individual Defendants insist that *Rutan*, 497 U.S. at 73,

---

[34] *See Breaux*, 205 F.3d at 157 ("adverse employment action" for First Amendment retaliation claims under 42 U.S.C. § 1983 is restricted to "ultimate employment decisions" such as discharges, demotions, refusals to hire, refusals to promote, and reprimands).

[35] This Court observes that the Fifth Circuit, itself, recently repeated that "this court has not yet decided whether the *Burlington* standard applies to First Amendment retaliation cases.  *Gibson v. Kilpatrick,* 734 F.3d 395, 400 n.4 (5th Cir. 2013).

simply held that failure to hire, failure to rehire after a layoff, denials of promotions, and denials of transfers constituted adverse employment actions for purposes of First Amendment retaliation claims. Defendants observe that its holding is not inconsistent with the more specific standard established in *Breaux*, 205 F.3d at 157 ("in the education context, this court has held that decisions concerning teaching assignments, pay increases, administrative matters and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation."). Plaintiff has not alleged that TSU refused to hire her or that she was denied any promotion or transfer due to her alleged protected speech. Instead the retaliatory actions asserted are requests to retire, discouraging her attempts to secure promotion, providing lower compensation than peers, disqualification from serving on committees and in other academic activities, personal disparagement, and heavier teaching loads. Plaintiff does not assert that she was actually denied a promotion due to her speech, but only that she was discouraged from seeking one. Individual Defendants argue that such administrative matters and departmental procedures do not rise to the level of an actionable adverse employment action to support her claim under either *Breaux* or *Rutan*.

Nor was Jackson's alleged speech a matter of public concern. Contrary to Plaintiff's contentions, it is not the law that a speech by an employee relating to the governance of a university is public speech protected by the First Amendment unless the speech is part of the employee's official duties. Instead, for First Amendment protection, the employee must speak "as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418. Where a university professor speaks out, the court must examine the "content, form and context" of his statement to determine his primary motivation in complaining to the administration. *Dorsett*, 940 F.2d at 124-25 (finding that professor's complaint made only internally to university administrators was not a matter of public concern protected by the Fifth Amendment because his primary motivation was to address internal matters common among professors, including "academic standards, grade inflation, and student competence," as well as assignments of overload classes; holding that the professor's speech was not a matter of public concern and was not protected by the First Amendment.). Defendants maintain that *Dorsett* is on point here. They also contend that Plaintiff's internal complaints to the Board of Regents regarding credentials of some faculty, faculty salaries, treatment of students, accreditation of the pharmacy program, and student dismissals are not matters of public concern under the law

Furthermore, Defendants again emphasize that Plaintiff pleads no facts plausibly suggesting that her speech motivated any of the Individual Defendants to take retaliatory actions, e.g., she fails to plead facts establishing temporal proximity between the speech and alleged retaliation or knowledge of the speech by Individual Defendants.

Individual Defendants further assert that the cases cited by Plaintiff to support her view that the law was "clearly established" to protect her from retaliation actually show the opposite. In *DePree*, 588 F.3d at 288, the Fifth Circuit indicated that it had not applied the *Burlington* standard to First Amendment retaliation claims and therefore "the interrelation among *Harrington, Dorsett, and Burlington* yields no 'clearly established law' that [the defendant] would have known that she was violating by revoking DePree's teaching duties and access to the business school." In *Dorsett* the panel found that because Dorsett failed to establish a First Amendment violation, the court did not need to reach the question of qualified immunity. 940 F.2d at 125.

In addition Defendants argue that the assault claim against Dr. Abobo is barred by § 101.106(f) of the TTCA because he was "in and about the performance of a task lawfully assigned . . . by competent authority." Tex. Civ. Prac. & Rem. Code § 101.100(5). *See Hopkins v. Strickland*, No. 01-12-00315-CV, 2013 WL 1183302, at

*3 (Tex. App.--Houston [1st Dist. March 21, 2013)("[A]n act may still be within the scope of the employee's duties even if the specific act that forms the basis of the civil suit was wrongly or negligently performed, so long as the action was one related to the performance of his job."), *citing City of Lancaster v. Chambers*, 883 S.W. 2d 650, 658 (Tex. 1994). *See also Texas Dept. of Pub. Safety v. Tanner*, 928 S.W. 2d 731, 735 (Tex. App.--San Antonio 1996, no writ)("Even if a specific action is wrong or negligent, an officer acts within the scope of his authority when performing the general duties assigned."). The same is true for intentional torts where "the course of conduct in which the tort occurred is within the scope of employment. *Mason v. Wood*, No. 09-12-002460CV, 2013 WL 1088735, at *3 (Tex. App.--Beaumont Mar. 14, 2013, Rule 53.7(f) motion denied)(holding that intentional torts of theft and fraud can be within the scope of employment),[36] *citing Restatement (Third)*

---

[36] In *Mason*, the court held that an inmate's claim that a correctional officer committed theft under the Theft Liability Act when he confiscated the inmate's property under the TDCJ's policy was subject to § 101.206(f), but because the inmate conceded that the officers were acting in the scope of their employment, it dismissed the claim.

The Court agrees that intentional torts may be within the scope of employment "if the course of conduct in which the tort occurred is within the scope of employment." *Restatement (Third) of Agency* § 7.07. *Herrera v. Aguilar*, 2012 WL 4784125, at * (W.D. Tex. Sept. 6, 2013), *citing Deffenbaugh-Williams*, 188 F.3d at 286)("[I]f the conduct is the kind the employee is employed to perform, occurs substantially within the authorized time and space limits, and is actuated, at least in part, by a purpose to serve the employer[,] such action is within the scope 'even if

of Agency § 7.07 cmt. c (2006). *See also Redburn v. Garrett*, No. 13-12-00215-CV, 2013 WL 2149699, at *6 (Tex. App.--Corpus Christi May 16, 2012, rev. denied)(intentional tort of trespass can be within scope of employment.).

Defendants point out that Plaintiff does not dispute that the Eleventh Amendment bars Plaintiff's age discrimination claim under the TCHRA, but she does respond that permitting it to go forward here "would provide a vehicle for efficient vindication of the policies admittedly adopted by the state." #47 at 9-10. The Eleventh Amendment and the underlying sovereign immunity of Texas override this argument and bar non-consenting states from being sued in federal court as a matter of law. The Court agrees.

Plaintiff's current response in regard to her medical leave claim under state law is that TSU's actions violated both the FMLA and TSU's internal sick leave polices, the latter constituting a breach of contract and interference with Plaintiff's property rights in violation of the Texas Constitution. She also seeks to recover under the theories of quantum meruit and promissory estoppel. Pursuant to the law which the Court has cited earlier,

---

the employee . . . used forbidden means of accomplishing results.'"). *See also Lopez v. Serna*, 2013 WL 5338470, at *3 (Tex. App.--San Antonio Sept. 25, 2013)("[W]e reject Lopez's argument that the principles announced in *Franka* [construing § 101.106(f) apply only to negligence claims and not intentional claims.").

the Court agrees with Individual Defendants that any claim under the FMLA would be barred by sovereign immunity.  Defendants have also shown that Texas courts have uniformly held that as a matter of law contract and quasi-contract claims such as promissory estoppel and quantum meruit are barred by sovereign immunity. *Texas Nat. Res. Cons. Comm'n v. IT-Davy*, 74 S.W. 3d at 853; *Dickens*, 243 S.W. 3d at 737; *Ho*, 984 S.W. 2d at 682-83; *Nussbaum*, 2000 WL 1864048, at *3.  The Court agrees that such claims are not cognizable in this Court in the face of sovereign immunity.

Individual Defendants also correctly highlight the fact that no claim for alleged taking of property rights in violation of the Texas Constitution is found in the Second Amended Complaint, which instead clearly asserts in ¶ 7 that the claim is pursuant to "statutory and common law principles of contract and promissory estoppel in Texas law."  This Court concurs.  Even if she had alleged such a claim, Texas law does not provide for a private cause of action for violation of a right guaranteed by the Texas Constitution. *Beaumont v. Bouillion*, 896 S.W. 2d 143, 149-50 (Tex. 1995); *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 507 (2001)("tort damages are not recoverable for violations of the Texas Constitution").  Even if Texas law allowed for such claims, Plaintiff fails to cite a single case holding that interference with sick leave by an employer in violation of the employer's leave

-68-

policies constitutes an improper taking of some property right subject to constitutional protection.   What Texas case law does hold is that employment policies by themselves do not create property rights to the benefits set forth in those policies. *Werden v. Nueces County Hosp. Dist.*, 28 S.W. 3d 649, 651 (Tex. App.--Corpus Christi 2000, no pet.)(holding that employee handbook providing for sick leave did not create a property right to such leave); *Gamble v. Gregg County*, 932 S.W. 2d 253, 255 (Tex. App.-- Texarkana 1996, no writ)(same).   Again, the Court agrees.

## Court's Decision

**TSU's Motion to Dismiss**

First, as a matter of law, as indicated in the Court's summary of substantive law and elsewhere in this Opinion, Texas Southern University's motion to dismiss must be granted on Plaintiff's claims against it for age discrimination under the TCHRA and possible claim for interference with medical benefits under the self-care provision the FMLA for lack of subject matter jurisdiction based on sovereign immunity.   Moreover, although she has not pleaded a contract with TSU, since she lacks legislative consent to sue an arm of the state of Texas, sovereign immunity from suit also bars any possible contract and quasi-contract claims such as promissory estoppel and quantum meruit

Second, the Court agrees with Defendants that as a matter of

law Plaintiff has no entitlement to medical leave nor any claim for retaliation for taking medical leave under state law.

In sum, the Court grants TSU's motion to dismiss.

**Individual Defendants' Motion to Dismiss**

Individual's motion to dismiss is more problematic.

First, with respect to Plaintiff's claim against Dr. Adobo in his individual capacity for assault and battery, as a matter of law under § 101.106(f), "[t]he construction of section 101.106(f) . . . foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of his employment." Franka, 332 S.W. 2d at 381.  If he was, and if the suit is then construed as a claim against Adobo in his official capacity, it must be dismissed because Texas has not waived its sovereign immunity for intentional torts for assault and battery.  See, e.g., *Huff v. Refugio County Sheriff's Dept.*, 2013 WL 5574901, at *3 (S.D. Tex. Oct. 9, 2013).

Despite Defendants' "plausible conclusion" that Abobo was acting within the scope of his employment when he allegedly assaulted Plaintiff merely because the assault purportedly occurred on TSU's campus in the presence of other faculty, students, and administrators, the complaint's allegations are insufficient to establish that he was acting within the scope of his employment. Defendants in a footnote (#41 at p. 12 n.5) assert that Adobo was

proctoring an exam with Plaintiff at the time of the alleged assault, but the Court cannot consider that statement in a Rule 12(b)(6) review.  Nevertheless Plaintiff should not be allowed to avoid dismissal of her claim if it lacks merit simply by avoiding mention of relevant contextual details, which are clearly known to her and essential for a decision under *Franka* and § 101.106(f).  In the interests of time and expense, the Court therefore orders counsel Plaintiff to file a supplement to her Second Amended Compliant alleging details of the circumstances under which the alleged assault occurred.  If the assault occurred while Abobo and Plaintiff were proctoring an exam, in the scope of their job duties, § 101.106(f) would extend sovereign immunity protection to him and foreclose the claim against him in his individual capacity.

With regard to Plaintiff's First Amendment retaliation claim, Plaintiff has identified the official positions of the Individual Defendants and conclusorily alleged that Defendants Osemene, Ohia, and Hayes, were Plaintiff's administrative supervisors and exercised influence and control over her faculty rank, compensation, and duty assignments.  The Court finds that it is arguable that some of Plaintiff's allegations plausibly constitute matters of public concern that she asserts as a citizen and not pursuant to her official duties, for example, inadequate training and professional preparation of the students and the accreditation

of the pharmacy program.  She alleges that she spoke about them at public meeting of the Board of Regents, that the speech was covered in the news media, and that these matters were being disputed in the public arena.  Because the Court lacks even a minimal factual record, no less a full one, it is unable to make such a determination at this time.

Nevertheless the Court agrees with Individual Defendants that Plaintiff fails to state a claim for First Amendment retaliation because she does not allege an adverse employment action that satisfies the Fifth Circuit definition for First Amendment retaliation claims under 42 U.S.C. § 1983, i.e., that an adverse action is restricted to "ultimate employment decisions" such as discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Breaux*, 205 F.3d at 157.  While she has alleged in the Second Amended Complaint, her "third bite at the apple," that Individual Defendants *requested* that she retire and *discouraged* her efforts to secure a promotion, she has not alleged that they discharged her or denied her a promotion or reprimanded her.[37]

---

[37] Her other complaints also fail to meet the Fifth Circuit's standard for a adverse employment action:  lower compensation than what she was entitled to, given her education, experience and demonstrated ability, scope of duties, and time of service; arbitrary disqualification from serving on the Faculty Senate and on institutional committees; personal disparagement and humiliation of Plaintiff; denial of compensation and leave provided by University policies and practices; denial of access to or use of office equipment; denial or disregard of her

Indeed they emphasize and her complaint supports the fact that she returned from medical leave and continued as a tenured associate professor at TSU.  Because her conclusory allegation that on her return from medical leave she was not allowed to return to classroom teaching is contradicted by her contrary allegation that she was assigned "a teaching load disproportionately greater than assigned to other faculty members," she fails to state a plausible claim of even constructive demotion or reprimand.  *DePree*, 588 F.3d at 288.

Because Plaintiff has failed to state a claim that she suffered an adverse employment action under the Fifth Circuit's standard, she fails to state a Fifth Amendment retaliation claim, so the Court does not reach the issue of qualified immunity.

Accordingly, for these reasons the Court

ORDERS the following:

(1) TSU's motion to dismiss is GRANTED as a matter of law based on sovereign immunity  on Plaintiff's claims for age discrimination under the TCHRA, contract, and quasi contract (promissory estoppel), which are DISMISSED without prejudice to being reurged in state court, if permissible;

---

participation in academic activities; and assignment of a teaching load disproportionately greater than that assigned to other faculty members.

(2) TSU's motion to dismiss is GRANTED with prejudice as to Plaintiff's unclear and thus uncertain claim for interference with medical benefits under the self-care provision the FMLA for lack of subject matter jurisdiction based on sovereign immunity;

(2) Individual Defendants' motion to dismiss is currently DENIED as to Plaintiff's claims against Dr. Adobo for assault and battery, but Plaintiff's counsel shall file within ten days a supplement to her Second Amended Complaint alleging legally relevant factual details of the circumstances under which the alleged assault occurred; and

(4) Individual Defendants' motion to dismiss is GRANTED as to Plaintiff's First Amendment retaliation claim because she fails to allege that she suffered an adverse employment action under the Fifth Circuit's standard.

**SIGNED** at Houston, Texas, this  3rd  day of  February , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE